POWERS v. VANLEER.

AUTOMOBILES—LIMITED ACCESS HIGHWAY—OVERTAKING VEHICLES— AUDIBLE WARNING—INSTRUCTIONS.

Instruction given in action arising out of collision between defendant's overtaken and plaintiff's overtaking vehicles on northbound lane of limited access highway whereby jury was precluded from finding that plaintiff was guilty of contributory negligence for having failed to blow his horn when seeking to pass a vehicle signaling a left turn constituted reversible error, where there was an issue of fact as to whether or not defendant had activated his truck's electric turning signals to indicate he was about to bear left (CLS 1961, § 257.706).

O'HARA, J., dissenting.

---

REFERENCES FOR POINTS IN HEADNOTE

7 Am Jur 2d, Automobiles and Highway Traffic §§ 217, 221, 778–780, 786, 788, 800, 808.

Reciprocal duties of drivers of automobiles or other vehicles proceeding in the same direction. 24 ALR 507, supplemented in 47 ALR 703, 62 ALR 970, 104 ALR 485.

Appeal from Monroe; Weipert, Jr. (William J.), J. Submitted June 2, 1964. (Calendar No. 10, Docket No. 50,371.) Decided March 1, 1965.

Case by Lynn Powers and Royal Indemnity Company, a New York corporation, against Clarence VanLeer and Robert Webb for personal injuries and property damage arising from collision of motor vehicles November 5, 1958. Verdict for plaintiffs. New trial denied. Defendants appeal. Reversed and remanded.

*Winson & Pruden,* for plaintiffs.

*Thomas E. Griffin (William L. Taft,* of counsel), for defendants.

O'HARA, J. (*dissenting*). This case arises out of an auto accident which occurred on the Detroit-Toledo expressway. At the place involved, the expressway runs north and south. The north- and southbound lanes are separated by the customary grass median, the crossing of which is prohibited. Plaintiff[1] entered the limited access highway about a mile from the scene of the accident and turned north. Each side of the highway, at the point of impact, has 2 lanes. Defendant was also northbound. The collision resulted when defendant attempted to change his lane of travel from the easterly (right-hand lane) to the westerly (left-hand lane). When he observed plaintiff on his left, in what appeared to be a passing position, he claims he swung back to the right. The precise point at which the vehicles collided is in factual issue. We would add nothing to the jurisprudence of the State

[1] We use the singular here for purposes of clarity. The additional plaintiff insurance company is included by reason of its payment to Lynn Powers his collision coverage benefits. The company's right to recover, if any, is identical with that of the individual plaintiff Powers.

by hashing over the testimony of plaintiff-defendant and the eyewitnesses. There are the usual and understandable variations. Plaintiff claims defendant "suddenly he turns [ed] left in front of me" without signaling. Defendant counters with the claim that "I turned on my signals" and was "easing over to the left-hand lane." There is some controverted descriptive testimony that at or near the collision there were some vehicle tracks across the median and an absence of grass. One fact is uncontroverted: plaintiff neither before beginning to pass nor in the act of passing, blew his horn.

From this fact, the law applicable thereto, and the manner in which the trial judge charged the jury in relation thereto emerges the only meritorious and the dispositive appellate issue.

In simple substance, it is appellant's claim that he was sandbagged by the court's instruction on the issue of plaintiff's causal contributory negligence. He claims that after agreeing to give a request to charge concerning the obligation of a driver to give an audible signal when "reasonably necessary to insure safe operation," the court, in legal effect, directed a finding that under the circumstances plaintiff had no obligation to sound his horn. Disregard of GCR 1963, 516.1 and 516.2 is the claimed basis for the error. Plaintiff contends interpretation thereof in this respect is a question of first impression. The sub-rules are herewith set out:

".1 Request for Instructions. At or before the close of the evidence, any party may, or at any time the court reasonably directs, the parties shall, file written requests that the court instruct the jury on the law as set forth in the request. A copy of such requested instructions shall be served on the adverse parties in accordance with Rule 107. The court shall inform counsel of its proposed action on the requests prior to their arguments to the jury, and, subject

to the provision of sub-rule 516.3, shall instruct the jury after the arguments are completed. The court may make such comments on the evidence, the testimony, and the character of the witnesses as in its discretion the interests of justice require.

".2 Objections. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

The request to charge is likewise set forth:

"REQUEST FOR INSTRUCTIONS
(Filed April 4, 1963)

"Now come the above defendants by their trial counsel, William L. Taft, and request that the court submit the following instructions to the jury:

"You are instructed that the [applicable section of the Michigan vehicle code],[2] reads as follows:

" 'Every motor vehicle when operated upon a highway shall be equipped with a horn in good working order and capable of emitting sound audible under normal conditions from a distance of not less than 200 feet but no horn or other warning device shall emit an unreasonable loud or harsh sound or a whistle. The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon a highway.' "

The claimed materially prejudicial charge is as follows:

"Defense counsel has asked the court to read to you the following excerpt from the motor vehicle code:

---

[2] PA 1949, No 300, § 706 (CLS 1961, § 257.706; Stat Ann 1960 Rev § 9.2406).

" 'Every motor vehicle when operated upon a highway shall be equipped with a horn in good working order and capable of emitting sound audible under normal conditions from a distance of not less than 200 feet but no horn or other warning device shall emit an unreasonable loud or harsh sound or a whistle. The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon a highway.'

"This is a direct quotation from the Michigan motor vehicle code and the court feels that he must instruct you on that subject as follows: It is not necessary to sound one's horn in passing a vehicle on the expressway while the vehicle that is being passed is in its own far side of the road, and with adequate passing lane available there is no requirement of the law that the horn be sounded. All the proofs indicate in this case that when the plaintiff Powers was beginning his passing the defendant's truck was in the far side of the road with adequate room to pass, so that there was no requirement for sounding of the horn; such would only become necessary, members of the jury, if safety thereafter reasonably required and there were time to do it. Obviously if during a proper passing the overtaken vehicle suddenly turns into the direct path of the passing car, and there is no time to blow the horn with any effect, there is no requirement whatsoever in the law that the horn be blown, and failure to blow it is not negligence on the part of the plaintiff, and not contributory negligence."

To sustain his position on this issue, plaintiff relies on *Tyrill* (not *Tyrell* as cited) v. *Alcoa Steamship Co., Inc.* (SD NY), 185 F Supp 822, arguing its applicability by analogy in its construction of the similar Rule 51 of the Federal rules of civil procedure.[3] In *Tyrill* (p 824) "the court, inadvertently,

---

[3] 28 USCA, Federal Rules of Civil Procedure, Rule 51.—Reporter.

did not advise counsel in advance of the charge
* * * of its proposed action upon their [both
counsels'] respective requests," and the case held
that "noncompliance with the rule does not, in and
of itself, furnish a ground for a new trial." In
*Tyrill,* the court carefully pointed out:

"While it is true that counsel failed to make a
specific request of the court as to the disposition of
his proposed instructions, he has explained his fail-
ure to do so." (p 826.)

We are unable to determine from the decision just
what that explanation was. Whatever it was, it
seems to have satisfied the court on appeal. It is
significant, however, that *Tyrill* (p 826) was not
meant to be accepted as general precedent:

"Under all the circumstances, the court is per-
suaded that this is that exceptional situation where
noncompliance with Rule 51 was to the material
prejudice of the plaintiff, and, accordingly, on that
ground, grants the motion to set aside the verdict."

The ground of reversal in *Tyrill* then was mate-
rial prejudice to plaintiff by reason of the court's
failure to advise his attorney in advance of the
court's disposition of a request to charge. In the case
at bar, the substance of the requested instruction
was given, namely, the reading of the excerpt from
the motor vehicle code. This is precisely what de-
fendant asked the court to do. We are not prepared
to say with complete certainty that sub-rules 516.1
and 516.2 are actually involved. What defendant
here really asserts is that the portion of the charge
immediately following the requested reading of the
statutory excerpt constituted, in appellants' words,
"taking this issue (the applicability of the audible
signal statute) from the jury." We do not so read
the charge. The court said "all the proofs indicate

in this case that when plaintiff Powers was beginning his passing the defendant's truck was in the far side of the road with adequate room to pass, so that there was no requirement for sounding of the horn." If the court was not in error in his premise as to the position of defendant's truck when plaintiff began to pass, the instruction was not erroneous. We have read the record with care, both the excerpts included in the appendices and the trial transcript. Nowhere can we find any contradiction of the court's premise. Most assuredly, the defendant didn't know where his vehicle was when plaintiff "was beginning to pass." His testimony was he didn't see plaintiff's car until it was "at the back end of the truck."

The court then continued as to the applicability of the statute:

"Such [sounding of the horn] would only become necessary, members of the jury, if safety thereafter reasonably required and there were time to do it. Obviously if during a proper passing the overtaken vehicle suddenly turns into the direct path of the passing car, and there is no time to blow the horn with any effect, there is no requirement whatsoever in the law that the horn be blown."

Again, if the court's hypothesis was within the range of the testimony there was no legal error in the charge. Defendant described his change of lanes as "easing over" from the right to left. Other testimony described his action as a "sharp turn" and swerving "all at once." With such factual conflict, it was not only proper but it was incumbent upon the trial judge to explain the applicability of the statute dependent on which factual version the jury accepted.

We decline here to hold that GCR 1963, 516, subrules .1 or .2, were disregarded by the trial judge. We decline to interpret the rule other than to hold

that under sub-rule .1 it is the responsibility of the counsel who considers that the trial judge has not informed him of his proposed action with reference to requests to charge, to make a record of the court's declination or failure so to do.

We do not consider the mere statement in the defendants' brief:

"The record is clear that as soon as the instructions to the jury were completed by the court, the court had the clerk administer the oath to the bailiff to attend the jury, and the jury retired to deliberate,"

to have any value whatsoever in establishing error.

Further, absent-on-record objection forthwith made, stating "specifically the matter to which he objects and the grounds of his objection," or a showing of a denial of the opportunity so to do, we hold counsel to have waived his rights under GCR 1963, 516.2.

We have examined all the assignments of error and on the basis of the whole record we find no reversible error. The order denying the motion for new trial should be affirmed. Appellees may tax costs.

Souris, J. I cannot agree with Mr. Justice O'Hara's conclusion that the trial court was correct in instructing the jury that plaintiff Powers was under no duty to sound his horn because "all the proofs indicate in this case that when plaintiff Powers was beginning his passing the defendant's truck was in the far side of the road with adequate room to pass".

The statute applicable herein provides that a driver must sound his horn when reasonably necessary to insure safe operation of his vehicle. CLS 1961, § 257.706 (Stat Ann 1960 Rev § 9.2406). De-

fendant VanLeer testified that before he was over-taken by Powers' vehicle, he had activated his truck's electric turning signals to indicate that he was about to bear left. This was, I concede, testimonially controverted by Powers. However, if the jury believed VanLeer's testimony it would have been entitled to find that in such circumstances reasonable prudence required Powers to sound his horn before trying to pass VanLeer.

Thus, the trial court's instruction to the jury that Powers need not have sounded his horn invaded the province of the jury by precluding its finding that Powers was contributorily negligent for having failed to blow his horn when seeking to pass a vehicle signaling a left turn. This error requires our reversal of the judgment below. See *Washburn* v. *Lucas* (1964), 373 Mich 610, 619.

Reversed and remanded for new trial. Costs to defendants.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SMITH, and ADAMS, JJ., concurred with SOURIS, J.