Hubert TYRILL, Plaintiff,

v.

ALCOA STEAMSHIP COMPANY, Inc.,
Defendant.

United States District Court
S. D. New York.

Aug. 2, 1960.

See also, 172 F.Supp. 363, affirmed
266 F.2d 27.

Morris Hirschhorn, New York City,
Standard, Weisberg, Harolds & Mala-
ment, New York City, Louis R. Harolds,.
New York City, of counsel, for plaintiff.

Haight, Gardner, Poor & Havens,.
New York City, J. Ward O'Neill, Francis
X. Byrn, Thomas F. Molanphy, of coun-
sel, for defendant.

WEINFELD, District Judge.

Plaintiff moves, pursuant to Rule 50·
of the Federal Rules of Civil Procedure,.

28 U.S.C.A., to set aside a jury verdict in the defendant's favor and for judgment non obstante veredicto. He also moves to amend his complaint, to amend his answers to defendant's interrogatories, and for other relief.

While the voluminous papers submitted in support of the motion contain allegations, many of them born of hindsight and without substance, the essence of the plaintiff's position is:

(1) that the verdict was against the overwhelming weight of evidence;

(2) that the Court committed error—

(a) in its charge to the jury, by restricting plaintiff's right to recover, to the specific theory advanced by him as to the cause of the vessel's alleged unseaworthiness;

(b) in failing to inform plaintiff's counsel in advance of summation of its proposed action upon requests, as required by Rule 51 of the Federal Rules of Civil Procedure.

It is unnecessary to review at length the details of the trial testimony. An indisputable fact is that plaintiff was precipitated from the upper 'tween deck where he was engaged in unloading activities on board the defendant's vessel, to the lower deck. Equally indisputable is the fact that he sustained devastating and permanently disabling injuries. However, these facts did not automatically entitle plaintiff to a recovery. His burden, of course, was to establish his claim that the vessel's unseaworthiness was the cause of his injuries.

The plaintiff contended at all times that the accident occurred when he stepped upon a hatch board which gave way and upended, causing him to be thrown into the hold. This was his claim in his complaint, his specific answer to interrogatories, his testimony in his pre-trial deposition, and his version to the jury.

His basic contention has always been that the hatch board gave way because it was short. Two co-employees gave support to his claim, although a pre-trial statement of one tended to impeach the latter's testimony.

The defendant, in resisting plaintiff's claim, offered no eyewitness to the accident. It suggested, however, that plaintiff fell through an opening caused by a missing hatch board and not because he had stepped upon a defective hatch board. The challenge to plaintiff's version of the accident was based principally upon the testimony of the Chief Mate, and also that of the Fourth Mate, who swore that shortly before its occurrence, all hatch boards were in place and in good condition; that, following the plaintiff's removal from the hold into which he had fallen, all boards covering the hatchway had been replaced and fitted properly.[1] The Chief Mate gave it as his conclusion or guess that apparently someone, either plaintiff or a co-worker, had removed a hatch board before the accident, under circumstances and for reasons unknown, and had failed to replace it. The defendant urged that the jury could reasonably draw an inference that the hatch boards were in good condition before and after the accident and that it occurred when plaintiff had fallen into an open space, resulting from a missing hatch board which had not been replaced, and not as plaintiff contended, when he stepped upon a defective board.[2]

As stated in the charge—"In short, the defendant urges that Tyrill has failed to sustain his burden of proof as to how the accident occurred, and also failed to establish unseaworthiness * * *."

The Court, during the trial, raised the question whether plaintiff, in addition to his own claim as to the cause of the accident, was also entitled to have submitted to the jury the suggested theory ad-

1. The boards had been removed to permit the injured plaintiff to be carried from the lower hold.

2. The conclusion of the Chief Mate, with its consequent challenge to plaintiff's version of the occurrence, was injected into the case when the Mate was called as plaintiff's witness and questioned by plaintiff's counsel on direct examination.

vanced by the defense. Counsel were requested to brief this issue, which seemed not to have engaged their particular attention until raised by the Court. After some delay, defendant's attorneys submitted a memorandum. Plaintiff's lawyer failed to submit any.

After independent research, the Court concluded that since the only evidence offered by plaintiff and his witnesses supported his version as to how the accident occurred, and, as already noted, this theory had been consistently advanced from the inception of the suit, his claim of unseaworthiness should be confined to a defective hatch board, whatever the defect, whether short or otherwise.

Prior to the close of evidence, and pursuant to the Court's directions, counsel had filed written requests for instructions to the jury. The plaintiff submitted, among others, the following proposed instruction:

> "8. A defective hatch board whether short *or* missing makes a vessel unseaworthy, per se." (Emphasis supplied.)

The Court did not grant this request and, on the contrary, in view of its conclusion, specifically instructed the jury, after appropriate instructions under the doctrine of the warranty of seaworthiness, as follows:

> "* * * * Thus, before plaintiff may recover, you must be satisfied that he has established by a fair preponderance of the evidence that the vessel was unseaworthy under his theory that there was a short or otherwise defective hatch cover in the No. 4 'tween deck.

> "If you are unable to decide the cause of plaintiff's fall, then he has failed to sustain his burden of proof and in that circumstance the defend-

ant would be entitled to your verdict."

The Court, inadvertently, did not advise counsel in advance of the charge, as specified by Rule 51 of the Federal Rules of Civil Procedure, of its proposed action upon their respective requests. Nor did counsel request that they be so advised. Noncompliance with the Rule does not, in and of itself, furnish a ground for a new trial or for a reversal of judgment. Those cases which have considered the Rule are in accord in holding that noncompliance does not compel a new trial unless material prejudice is shown. In the only case where failure to observe the Rule was held to be prejudicial error, counsel's repeated requests for advice as to the disposition of his submitted instructions were rejected.[3] In all other cases where counsel failed specifically to request from the Court the disposition of the proposed instructions and proceeded with his argument, the failure to comply with Rule 51 was held harmless error.[4]

Our own Court of Appeals, in the one case where it considered the question of failure to comply with the Rule, refused to disturb a judgment, especially since the complaining party proceeded with its argument without requesting such information. However, the Court did note that "there is no showing of any resulting prejudice on this account."[5] Whether prejudice has been visited upon a litigant in consequence of nonobservance of the Rule must be tested against its objectives.

An essential purpose of Rule 51 is to permit counsel to argue intelligently upon the evidence, within the framework of the applicable law, and also, by reason of advance advice as to the disposition of requests for instructions, to alert

3. Downie v. Powers, 10 Cir., 1951, 193 F.2d 760, 767.

4. E. g., Luther v. Maple, 8 Cir., 1958, 250 F.2d 916, 920; Hardigg v. Inglett, 4 Cir., 1957, 250 F.2d 895; Gwinett v. Albatross S.S. Co., 2 Cir., 243 F.2d 8, certiorari denied 1957, 355 U.S. 828, 78

S.Ct. 40, 2 L.Ed.2d 41; Levin v. Joseph E. Seagram & Sons, 7 Cir., 1946, 158 F.2d 55, certiorari denied 1947, 330 U.S. 835, 67 S.Ct. 971, 91 L.Ed. 1282.

5. Gwinett v. Albatross S.S. Co., supra, note 4, at page 10 of 243 F.2d.

him to take appropriate exceptions following delivery of the charge.

■ The plaintiff excepted to the Court's refusal to permit the jury to find unseaworthiness based upon the alternative missing hatch board theory. Thus, plaintiff saved his exception with respect to the refusal to charge requested instruction number 8, and in the event of an appeal, his rights are protected as to this item. Accordingly, no prejudice can be claimed on this score.

Thus, the remaining inquiry is confined to whether the inadvertent failure to inform counsel as to the disposition to be made of his requested instructions on the vital issue of unseaworthiness affected the course of counsel's argument to the jury to plaintiff's prejudice.

■ Candor requires the Court to acknowledge that this is one of those exceptionally rare instances where it was in disagreement with the jury's verdict. To be sure, this does not mean that the jury's determination was contrary to the weight of the evidence. The jury, and not the Court, is the ultimate fact-finding body, and as long as differing conclusions may reasonably be drawn from the evidence, its verdict may not be disturbed.[6] The record here does not permit the Court to impugn the verdict, even though it may have reached a different result were it the trier of the fact.[7] However, the Court's contrariety of view does suggest critical examination of those factors claimed to account for, or to have contributed to, the jury's verdict.

■ Counsel swears that he assumed his request number 8, that unseaworthiness could be predicated upon either a defective or a missing hatch board, would be included in the Court's instructions to the jury; that since, upon the evidence, the cause of plaintiff's fall was one or the other, he paid little attention in his summation to this critical element, but concentrated on the damage question; that had he been informed that the request had been refused, his argument to the jury would have been substantially different; that since the Court's instruction made a defective hatch board the sine qua non of his claim of unseaworthiness, the force of his argument would have been directed to evidence tending to sustain his burden of proof on that basic issue; in effect, he asserts that the failure to be advised as to the disposition of requested instructions lulled him into a false sense of security on the vital issue of unseaworthiness.

While, as defense counsel correctly notes, his adversary had no right to assume, since the Court had requested briefs from counsel on the issue, that any decision had been made with respect to the proposed requests, counsel's actions tend to support his claim that he did act on the assumption.

The fact is, as defense counsel acknowledges, that plaintiff's attorney paid scant attention during his summation to the primary issue of unseaworthiness, but devoted practically his entire allotted time to the medical and damage aspects of the case. Significant circumstantial evidence which, if found credible, would strongly have buttressed the direct evidence of plaintiff and his co-workers as to the cause of the accident, was scarcely noted or called to the jury's attention.[8]

6. Tennant v. Peoria & P. U. Ry., 1944, 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520. Cf. Schulz v. Pennsylvania R. R., 1956, 350 U.S. 523, 76 S.Ct. 608, 100 L. Ed. 668; Tiller v. Atlantic Coast Line R. R., 1943, 318 U.S. 54, 68, 63 S.Ct. 444, 87 L.Ed. 610.

7. Tennant v. Peoria & P. U. Ry. Co., supra, note 6.

8. To cite one example: Two witnesses testified that after plaintiff's fall a hatch

board was found in the lower hold where he lay unconscious. This hold had no hatch area and there had been no unloading activities to account for its presence. The defendant's witnesses, contrary to those of the plaintiff, testified they observed no boards in the lower hold. If the jury could be persuaded that, in fact, a board was found in the lower hold, where there was no reason for it to be, a reasonable inference could readily be drawn that it was the very

One cannot be certain whether a full discussion of the evidence, circumstantial as well as direct, on the fundamental issue of unseaworthiness would have persuaded the jury to a different result, so, too, the Court does not, and cannot, know whether, in fact, counsel would have argued the case differently, as he now contends, had he known of the refusal to grant request number 8. The glaring failure to discuss vital evidence was due either to ineptitude of counsel (or, perhaps, deliberation), or, as he now contends, the result of his claimed erroneous assumption that the Court would charge the requested instruction. The Court is disposed to take counsel at his word that the presentation on behalf of the plaintiff would have been different and directed to the prime question, as well as the damage question, had he been informed of the disposition of his requests. This view finds support in his attempt to state to the jury (until he was interrupted by defense counsel and directed by the Court to refrain from discussing the law) that "unseaworthiness, per se," could be predicated either upon a defective or a missing hatch board.

The slurring over of the evidence touching upon the vital matter of liability may well explain the unexpected result. Events strongly suggest that "the applicable law of the case undoubtedly entered into and affected the course of the argument to the jury." [9] The likelihood of prejudice to the plaintiff's interest because of the failure of his counsel to urge the evidence supporting the claim of unseaworthiness cannot be ignored. While it is true that counsel failed to make a specific request of the Court as to the disposition of his proposed instructions, he has explained his failure to do so. In any event, the client should not be penalized for this failure, in view of the unusual situation here presented. Under all the circumstances, the Court is persuaded that this is that exceptional situation where noncompliance with Rule 51 was to the material prejudice of the plaintiff, and, accordingly, on that ground, grants the motion to set aside the verdict.

The Court has considered all other branches of the plaintiff's motion and they are respectively denied.

The Court cannot permit to pass unnoticed many statements in the affidavits and briefs submitted in support of plaintiff's motion, which are either without foundation in fact or distort the record. Probably they were born of the zeal of counsel in advocating the plaintiff's cause; while this may explain, it does not excuse advancing baseless allegations.

Settle order on one day's notice, returnable no later than 10 A.M., August 4, 1960.

---

hatch board upon which plaintiff claims he stood, and that it went down with him.

9. Downie v. Powers, 10 Cir., 1951, 193 F.2d 760, 767.