18482

Erwin K. YOUNG, a minor over the age of 14 years, by his Guardian ad Litem, Mabel Young, Respondent, v. Stanley LIVINGSTON, Appellant.

(147 S. E. (2d) 624)

*Messrs. Barnwell, Whaley, Stevenson & Patterson,* of Charleston, *for Appellant,*

*George E. Campsen, Jr., Esq.,* of Charleston, *for Respondent,*

March 31, 1966.

Brailsford, Justice:

In this case of unusual facts, the plaintiff, Erwin K. Young, a seventeen year old boy, suffered grievous injuries,

which resulted in the loss of a leg, when he was in collision with an automobile being operated by the defendant on King Street in the City of Charleston. The defendant appeals from a verdict and judgment in favor of plaintiff for $40,000.00, contending that his timely motion for the direction of a verdict upon the usual grounds should have been granted. In the alternative, the defendant seeks a new trial on the ground that the court committed prejudicial error in its instructions to the jury.

The accident occurred at about 10:00 P. M. approximately midway the short block of King Street between Cannon and Wolfe Streets. The distance between the near curb lines of the intersecting streets, neither of which crosses King, is 160.3 feet. All of the businesses in this block were closed except the Acme Bar on the east side of King. However, the area was well illuminated and a traffic light in the center of the Cannon Street intersection was in operation. At this location, King Street is 45.4 feet in width, with a sidewalk of 9.3 feet on each side. The street is divided into two lanes for travel, with marked spaces for parking on the west. The travel lanes of the one way street are for south-bound vehicles.

The first point argued by the defendant is that the sole proximate cause of plaintiff's injuries was his own negligence "in running into and across a busy street in the City of Charleston in the nighttime, without looking, into defendant's automobile, which at the time was stopped or almost stopped * * *"; at least, that plaintiff's negligence in these respects was a contributing cause. The second point argued is that the evidence was insufficient to raise a jury issue as to actionable negligence on the part of the defendant "in that he immediately put on the brakes the moment he saw six persons, including plaintiff, running in the street at night, there being no opportunity, in the emergency created by others, for him to do anything more than to take the split second action that he took * * *."

In passing upon these grounds of appeal, we are required to resolve all conflicts in the testimony, which are substantial, against the defendant and to view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the verdict. Our discussion of the evidence is guided by this basic rule, and does not purport to include a statement of all of the evidence tending to support defendant's contentions, nor of the contrary inferences which counsel would draw therefrom.

Immediately before the chain of events which culminated in this calamity was put in motion, the plaintiff and the defendant were at opposite ends of the block of King Street to which we have referred and on opposite sides of the street. The defendant in his automobile was stopped facing south in the eastern or left lane of King Street, north of the Cannon Street intersection, in obedience to the traffic control light. In this parked position, the front of his automobile, unless it protruded into the intersection, was at least 195.9 feet from the northern curb line of Wolfe Street. Plaintiff and two teen-age companions were on the western sidewalk of King at a point about opposite this northern curb line, where they were accosted by three negro youths in a threatening manner. Plaintiff's companions became frightened and ran diagonally toward two men in front of the Acme Bar, on the opposite side of King and about midway the block. As they entered the street, the defendant's automobile was still parked at the stop light and there were no other nearby vehicles, either parked or in motion. Moments later, one of the youths drew an open knife and advanced toward plaintiff with the weapon presented. Plaintiff was badly frightened and darted after his companions, running toward the two men in front of the open Acme Bar, the only source of help in sight. He was closely pursued by the three negroes, and was oblivious to everything except the pressing danger from behind. When plaintiff's companions reached the sidewalk, one of them looked back and saw that plaintiff was at about the middle of the street. As he fled diagonally across the

street, he was looking over his right shoulder at his principal assailant, who was "right on his heels."

In the meantime, the traffic signal having changed, the defendant was proceeding south on King Street in the eastern or curb lane at a speed of 15 or 20 miles per hour. The left front of his automobile was in collision with the fleeing plaintiff, within a few feet of the curb, at a point approximately 120 feet south of the position in which the automobile had been stopped when plaintiff's companions ran into the street. The point of collision was approximately 80 feet north of the northern curb line of Wolfe Street. However, plaintiff's diagonal course across King Street extended some 90 feet from the western curb line to the point of impact. Of course, defendant's travel toward the collision point coincided in time with that of plaintiff. It is, therefore, reasonable to infer that the parties were separated by at least twice the distance—180 feet—when plaintiff entered King Street, where defendant had an unobstructed view of him and of his pursuers. Furthermore, it is inferable from the testimony that plaintiff's companions were in the defendant's lane of travel, where he must have seen them, well before plaintiff had arrived at the center of the street.

It is admitted that defendant did not blow his horn, did not deviate from his course and did nothing to avoid the collision except to apply his brakes at the last moment. He contends that he had no time to do anything except to take this "split second action," and testified that his car was stopped when plaintiff ran into it. Other witnesses testified that the vehicle was in motion at the time, one that it was traveling 15 or 20 miles per hour. Plaintiff was lying behind defendant's automobile after the accident, indicating that it had not stopped at the time of impact and traveled at least a car length afterward.

We do not think argument necessary to demonstrate that the jury was justified in drawing inferences from the evidence which inculpated the defendant. The implied finding that by the exercise of due care the de-

fendant had ample opportunity to have discovered plaintiff's peril in time to have avoided injuring him, and negligently failed to do so, is sufficiently supported by the evidence.

Quite clearly, the evidence did not convict plaintiff of contributory negligence as a matter of law. He was placed in sudden peril through no legal fault of his own and was entitled to the benefit of the emergency doctrine. The situation was reasonably calculated to distract his attention from the necessity for keeping a lookout for traffic on King Street, and whether his failure to observe defendant's automobile was culpable or excusable was clearly for the jury under the doctrine of sudden peril and under the doctrine applied by this court in *Conner v. Farmers and Merchants Bank*, 243 S. C. 132, 132 S. E. (2d) 385.

The defendant next charges that the court erred in instructing the jury on the doctrine of last clear chance, as follows:

"I charge you that under what we refer to as the last clear chance doctrine, a Plaintiff who is guilty of contributory negligence may nevertheless recover if the defendant had the last clear chance to avoid the accident by the exercise of due care, if he realizes, or should have realized that the plaintiff was inattentive or unaware of the danger."

The defendant contends that the charge was inapplicable to the facts and misleading because, quoting from the brief, "the defendant acted as quickly as he possibly could have acted when he first saw plaintiff. It all happened in a flash. Under these circumstances, there could not possibly have been any time within which defendant could have acted to prevent the tragedy." The contention is without merit because, as we have endeavored to show, the evidence is susceptible of the inference that the defendant did have the opportunity, in the exercise of due care, to observe plaintiff's predicament in time to avoid the collision.

The last two points argued by defendant charge that the court erred in instructing the jury as follows:

"* * * Now, I charge you that on the question of contributory negligence, if you believe from the evidence that the plaintiff was confronted with a sudden peril not arising from his own fault, then he may act in the manner which the emergency seems to require for the purpose of avoiding injury to himself without being guilty of contributory negligence, provided he acted as one of his age and of his capacity, discretion, knowledge and experience would ordinarily have acted under the same or similar circumstances. * * *"

The first error assigned as to this excerpt from the charge is that the language following the word "provided", quoting from the brief, "had the effect, we submit, of confusing the jury into thinking that Plaintiff ·had less than average intelligence, * * *. There was no inference whatsoever from the uncontradicted testimony to show that plaintiff was subnormal, or below average in intelligence. Therefore the Lower Court's charge as set out in defendant's Exception VII could only mislead the jury in thinking that they could consider plaintiff as being of less than average intelligence."

The charge in this respect appears to conform to the law as stated in the majority opinion in *Chitwood v. Chitwood,* 159 S. C. 109, 156 S. E. 179, which, apparently, has never been cited by this court to the point, but has never been overruled. However, the contention of the defendant is without merit, because the language complained of is not, in our judgment, subject to the meaning attributed to it, on which, alone, the defendant rests his claim of prejudicial error.

Finally, without pointing to any other claimed error in the court's statement of the doctrine of sudden peril than that disposed of above, the defendant simply contends that this instruction, in effect, eliminated the defense of contributory negligence from the case and insured a verdict for plaintiff. We are satisfied that plaintiff was entitled to an instruction on this doctrine. Defendant has suffered no legal prejudice because the doctrine had ·a devastating effect

on the defense of contributory negligence. This simply illustrates the adage that the facts make the law.

Affirmed.

Moss, Lewis and Bussey, JJ., concur.