19809

W. Paul PRINCE, Appellant, v. ASSOCIATED PETROLEUM
CARRIERS, Respondent

(204 S. E. (2d) 575)

*Messrs. Stevens & Holt,* of Loris, *for Appellant,*

*Messrs. Suggs, McCutcheon & Ray,* of Conway, *for Respondent,*

April 22, 1974.

*Per Curiam:*

This action was brought by the plaintiff-appellant, W. Paul Prince, to recover damages resulting from a fire which destroyed his combination service station, store and pool-room. He alleges that the fire and resulting damages were caused by the negligence and recklessness of James E. Doughit, an employee of the defendant-respondent, Associated Petroleum Carriers, while he was pumping gasoline from a gasoline-tanker truck into the plaintiff's above-ground gasoline tanks. The issues were submitted to a jury which returned a verdict in favor of the defendant. Plaintiff has appealed from the trial judge's refusal to grant a motion for a new trial.

Plaintiff lists five questions in his brief, but we think question No. 2 is not raised by his exceptions. The five questions are as follows:

"1. Did the trial judge err in instructing the jury the law of unavoidable accident?

"2. Did the trial judge err in failing to charge the law of unavoidable accident correctly?

"3. Did the trial judge err in permitting Arthur Gautreau to testify as an expert witness upon the basis of an investigation made almost two months subsequent to the fire?

"4. Did the trial judge err in finding that plaintiff had waived his objections to Gautreau's qualifications and testimony by cross-examining him with reference thereto without first reserving his prior objections?

"5. Was the verdict of the jury contrary to the law and the evidence?"

Doughit arrived at plaintiff's place of business, driving defendant's tractor and aluminum tanker, at about 5:30 a. m. on October 17, 1971. The tanker carried approximately 8,000 gallons of gasoline to be used to refill two storage tanks located above-ground and about three feet to the rear of the filling station building. The tanker was divided into five compartments, four of which contained gasoline. After the first three compartments had been unloaded and while Doughit was in the process of emptying the final compartment, which was located at the end of the tanker, a fire occurred which destroyed the filling station and its contents.

Plaintiff's complaint sets forth six specifications of negligence and recklessness on the part of defendant's driver. In essence the specifications charged the driver with parking the tanker too close to the filling station and tanks (about 10 feet), and with revving up the truck motor, which powered the pump, when there was a leakage around the fittings and when fumes and vapors were present.

The defendant's answer consisted of a general denial, sole negligence and recklessness of the plaintiff, contributory negligence and contributory recklessness of the plaintiff, and unavoidable accident.

We are of the opinion that the trial judge did not err (as contended by plaintiff) in charging the law of unavoidable accident. Several witnesses of both the plaintiff and the defendant testified that they did not know what caused the fire. Apparently the trial judge concluded that one reasonable inference to be drawn from the evidence was that the fire was caused by the negligence of the defendant's driver. Accordingly, he submitted the issues to the jury. The evidence is also susceptible of the inference that the cause of the fire is unknown. This being true, an instruction on the law of unavoidable accident was justified. *Johnson v. Foster,* 202 So. (2d) 520 (Miss. 1967); Annot., 65 A. L. R. (2d) 12 (1959). The purpose of such a charge is to call to the jury's attention the fact that there is no necessity to find that someone was at fault.

The law referred to in the briefs relative to acts of God is not applicable since defendant did not allege and does not now contend that the fire was caused by an act of God.

The contention of the plaintiff in his brief, that, even if the unavoidable accident charge was proper, the judge incorrectly stated the law, is not for review by this Court. The record reflects that the trial judge, at the end of his charge, excused the jury and gave counsel an opportunity to object to any charge as made or to request additional instructions in accordance with § 10-1210 of the South Carolina Code (1962). Although the plaintiff objected to the charge of unavoidable accident, no error in the charge as made was pointed out. In addition, no exception to this Court encompasses the contention plaintiff now attempts, for the first time, to advance in his brief. For these reasons, the second question referred to hereinabove is not properly before the Court. Cases collected, 3 South Carolina

Digest Appeal and Error Key 248, 263(1) (1952, Cum. Supp. 1973).

Questions 3 and 4 set forth hereinabove challenge the qualifications of defendant's witness Arthur Gautreau to testify as an expert in the field of mechanical engineering, and challenge the trial judge's ruling that the plaintiff waived his objections to Gautreau's qualifications and testimony by cross-examining him without first reserving plaintiff's prior objections. We conclude that the judge did not err as a matter of law in admitting the testimony and, therefore, whether the cross-examination was with or without reservations is of no concern.

Defendant presented Gautreau "to testify as to the heat that is created by a spark of electricity, as to the heat from a gas flame or the heat that may be generated by the pipe on the truck. He also has expert knowledge of diesel engines."

Gautreau testified that he was a licensed professional engineer in the State of Georgia and of South Carolina. He had made court appearances "quite a few times" in the past as an expert. When asked to characterize the nature of his professional services, he answered, "To begin with, I am a consulting engineer. I have a business known as Arthur G. Gautreau and Associates. We specialize in engineering investigations. Such cases as this, Fire, accidents, power failures, and things of this nature. I am also associated with about four professors who are connected with the Armstrong University and one other engineer in construction."

He testified that he went to Forest City to investigate the tractor and found it badly burned. He described it as being a Cummings 4564 GE Serial 746154 White tank. He further stated that it was a common engine with which he was familiar.

There was testimony that at the time of the fire the truck motor was revved up to 2100 rpm, which was the equivalent

of the motor propelling the truck at 65 miles per hour. During direct examination the following transpired:

"Q. Mr. Gautreau, can you tell us the temperature that is required to ignite gas fumes or vapors?

"A. Well, now that varies quite a lot. I wrote it down here. I said that igniting temperature of gasoline would be five hundred thirty-six (536) to eight hundred fifty-three (853), depending upon the octane rate. It varies, you know, with high-test gasoline.

"Q. Do you have an opinion as to whether or not this unit at sixty-five miles an hour could create enough heat to cause flames to come from the exhaust pipe, or smokestack?

"Mr. Stevens: I object, Your Honor.
"A. Definitely not.

"The Court: One moment. I will allow it.
Subject to cross-examination."

Counsel argues that the last question and answer should have been excluded because it was not shown that the condition of the truck motor was the same when Mr. Gautreau examined it as when the fire occurred. From a reading of the whole of the testimony, we think Mr. Gautreau was obviously referring to a motor of the same type rather than the specific motor involved, and such testimony was admissible.

Gautreau's opinion relative to the amount of heat produced by a diesel engine of the type involved in this case was based not upon experiments with this particular engine two months after the fire as plaintiff appears to contend, but rather upon a general familiarity with and knowledge of such engines. It has been held that an expert may properly express his opinion when the facts upon which it is based are within his own knowledge. See *McCown v. Muldrow*, 91 S. C. 523, 74 S. E. 386 (1912), citing *Easler v. Southern Ry. Co.*, 59 S. C. 311, 37 S. E. 938 (1901).

Whether a witness has qualified as an expert, and ■ whether his opinion is admissible on a fact in issue, are matters resting largely in the discretion of the trial judge. Cases collected, 9 South Carolina Digest Evidence Key 546 (1952, Cum. Supp. 1973). We find no abuse of such discretion in this instance. Our disposition of this question renders unnecessary the consideration of the fourth question listed hereinabove.

The whole of plaintiff's argument relative to the ■ final question is devoted to a discussion of the law of the doctrine of *res ipsa loquitur*. He submits "[s]ince all requisites of the doctrine were met, *res ipsa loquitur* should have been applied by the Court." We disagree. At no point was this contention urged upon the court below, nor has plaintiff sought permission, in accordance with the procedure set forth in Rule 8, Section 10, of the Rules of this Court, to argue against the long line of decisions, collected in 14 South Carolina Digest Negligence Key 121(2) (1952 Cum. Supp. 1973), wherein it has been repeatedly held that said, doctrine is not recognized in this State. It may be noted, however, that "[u]nder most circumstances which have attended the delivery of petroleum products, the rule of *res ipsa loquitur* has been regarded as not applicable." Annot., 151 A. L. R. 1261 (1944).

Affirmed.