John MICELI, Plaintiff,

v.

INTERRESSANTSKAPET SEA TRANSPORT, Defendant and Third-Party Plaintiff,

v.

UNIVERSAL TERMINAL & STEVEDORING CORP., Third-Party Defendant.

No. 74 Civ. 2185 (IBC).

United States District Court, S. D. New York.

May 4, 1976.

Zimmerman & Zimmerman, New York City, for plaintiff; Martin Lassoff, New York City, of counsel.

Walker & Corsa, New York City, for defendant and third-party plaintiff; Joseph T. Stearns, New York City, of counsel.

Alexander & Green, New York City, for third-party defendant; Robert C. Heidell, New York City, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

Plaintiff moves for an order granting him judgment notwithstanding the verdict, or alternatively, a new trial pursuant to Rules 50(b) and 59, Federal Rules of Civil Procedure.

Plaintiff brought this diversity action against defendant IST to recover damages for personal injuries allegedly sustained aboard defendant's vessel, the M/S CONCORDIA FANA. Defendant IST impleaded third-party defendant Universal Terminal & Stevedoring Corp. Initially, plaintiff based his claim for damages upon two theories, defendant's negligence and the ship's unseaworthiness. During the course of the trial, plaintiff's negligence claim was dropped. Plaintiff's sole claim therefore, was that defendant's ship was unseaworthy in that a piece of plywood over which plaintiff was working failed to support his weight, causing his left foot to break through the wood. Plaintiff demanded damages in the amount of $250,000.

We presided over the trial in this case which lasted from February 23 to February 27, 1976. The jury found unanimously for the defendant. By their special verdict, the jury found that the vessel was seaworthy and/or that any unseaworthiness which may have attended the vessel was not the proximate cause of plaintiff's alleged accident.

In the present motion, plaintiff claims the evidence conclusively proved defendant's negligence and plaintiff free from contributory negligence; therefor plaintiff was entitled to a directed verdict. Alternatively, plaintiff seeks to vacate the verdict and asks the Court to order a new trial on the ground that the verdict herein was contrary to law, fact and the weight of the credible evidence (plaintiff concludes that the verdict was "just plain wrong."). (Lassoff motion at p. 12)

Plaintiff Miceli, a longshoreman, testified that he was working in hatch # 3, lower tween deck aboard defendant's vessel, the M/S CONCORDIA, on the day of the alleged accident. (Miceli, direct, p. 3) That day, plaintiff and co-worker Carl Last, along with the other members of the work gang, were carrying cartons and cases of frozen shrimp to a pallet to be taken out of the hatch in which they were working. (Miceli, cross, p. 3) Miceli testified that at about 2:30 PM, he had placed a case of shrimp on the pallet and was in the act of turning and backing up when his left foot broke through a sheet of plywood a distance of about 18 inches. (Miceli, direct, pp. 7–8) Whereupon, plaintiff testified, he fell backwards injuring his back, right buttock, hip, right hand and left ankle. (Miceli, direct, p. 8) Plaintiff further testified he had not noticed anything wrong with the plywood flooring before it broke; that it had not broken previously. (Miceli, cross, pp. 6, 10)

Immediately following the accident, Miceli was helped to his feet by two fellow workers and rested in the wing for ten or fifteen minutes. (Miceli, direct, p. 10) He then climbed two ladders and reported the accident to the timekeeper and safety man. (Miceli, direct, pp. 13–14) The latter, Mr. Gercken, wrote out a report based on a conversation with the plaintiff immediately after the accident; it supports plaintiff's testimony as to the facts surrounding the accident. (Gercken, cross, p. 17)

Carl Last, a regular member of the work crew in the hatch where Miceli was working, testified that he had not seen plaintiff before the accident nor thereafter until the morning of the trial. (Last, direct, p. 3) At the time of the accident, Last was three or four feet away from the plaintiff and actually saw plaintiff's left foot break through the plywood. (Last, direct, p. 6) Last could not, however, recall seeing plaintiff's foot being extracted from the broken plywood. (Last, direct, p. 9) Last testified that after the accident he and another man helped Miceli up and sat him in the wing where he remained for ten or fifteen minutes before leaving the hatch.

After Miceli left the hatch, the broken piece of plywood was allegedly replaced by wood boards. (Last, direct, p. 11; Last, cross, pp. 35, 69, 71, 72) The defective wood was never located. (Gercken, direct, p. 3)

Plaintiff's case rested principally upon the testimony of two witnesses, Miceli himself and Carl Last. There were, in addition, exhibits documenting the extent of Miceli's injuries and subsequent treatment.

Cross-examination of plaintiff and co-worker Last placed their credibility in controversy and raised a question as to whether the accident actually occurred or could have occurred as plaintiff testified.

On cross-examination of Miceli, the evidence showed that the piece of plywood which allegedly broke was at all times in apparently good condition. (Miceli, cross, pp. 7, 9) Further, the construction and thickness of the plywood rendered it highly improbable to break under the weight of one man. (Miceli, cross, pp. 16, 10) Prior to the accident, the plywood in question was covered with stacks of cartons of frozen shrimp; yet this did not cause the plywood to break or otherwise crack. (Miceli, cross, p. 4) Although the plywood was continuously traversed by the work crew on the day of the accident, it did not break or crack before plaintiff's alleged fall. (see, e. g. Miceli, cross, pp. 14, 17) As already mentioned, the broken plywood was never found. (Gercken, direct, p. 3)

Upon further cross-examination, evidence was adduced that there were voids or gaps created by the overlapping of wood which constituted the flooring over which the work crew unloaded the cartons of frozen shrimp. Viewed together with the aforementioned evidence that it was highly improbable that the plywood broke, and the fact that the broken plywood was never located, the inference was raised that perhaps plaintiff had tripped when caught in one of the gaps in the floor. This possibility was further bolstered by considerable evidence that plaintiff was injury-prone. (Miceli, cross, pp. 49–68)

Plaintiff's credibility was further put in question when he admitted acquiring disability benefits from Social Security and concurrently claiming non-disability to "badge in" ("Badging in" is the process by which a longshoreman represents that he is fit for work. Miceli, cross, p. 31) to work. (Miceli, cross, p. 31)

The testimony of Carl Last, plaintiff's co-worker and eye-witness to the alleged accident, was also drawn into question. Last testified that while he saw Miceli's foot go through the plywood to a length of about eighteen inches (Last, direct, pp. 4, 6), he did not see plaintiff remove his foot from the plywood. (Last, cross, p. 64) Further, Last testified that the plywood flooring was uneven and gapped, (Last, cross, 29) and continuously traversed upon (Last, cross, p. 63), thus supporting the inference that (1) plaintiff could not have broken through the plywood or (2) plaintiff may have tripped in a gap of the plywood flooring.

Plaintiff, in the present motion, claims: "This is a simple case. There was no evidence offered by either defendant or third party defendant to contradict any testimony in the plaintiff's case." (Lassoff motion at p. 6) While plaintiff may be correct in labeling this a "simple case," he is clearly inaccurate in stating that defendants did not offer evidence to contradict plaintiff's testimony, for by extensive cross-examination of plaintiff's major witnesses, Miceli and Last, defendants IST and Universal

created an issue as to the credibility of plaintiff's version of the accident. By the testimony of Miceli and Last, as well as Gercken to a lesser degree, the jury was called upon to accept or reject plaintiff's version of his mishap aboard the vessel. There was unquestionably enough evidence in the record to support a jury determination in either direction.

We are faced at the outset with the question of whether, on a motion for judgment notwithstanding the verdict, the Court may consider all the evidence or only the evidence favorable to the non-moving party and the uncontradicted, unimpeached evidence unfavorable to him. See *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir. 1970).

Plaintiff asserts that, "(O)n the motion for judgment notwithstanding the verdict, the Court should consider all of the evidence, not just that evidence which supports the non-mover's case.    . . ." (Lassoff motion at p. 6)  Although there is some support for plaintiff's contention, see *Boeing v. Shipman*, 411 F.2d 365 (5th Cir. 1969) which employed the "federal standard" *, the prevailing rule in this circuit was enunciated in *Bigelow v. Agway*, 506 F.2d 551 (2d Cir. 1974):

> "the non-moving party is given the benefit of all reasonable inferences from the evidence, and evidence unfavorable to it may be considered only if that evidence stands uncontradicted and unimpeached." *Id.,* at 554

Even if we adopted plaintiff's position that the Court consider "all the evidence" under the "federal standard", we would be constrained to deny plaintiff's motion for judgment notwithstanding the verdict or alternatively a new trial. Upon a careful review of the entire trial record, it is abundantly clear that there was evidence from which the jury could have properly found for the defendant, viewing that evidence as we must, in a light most favorable

to defendant and giving defendant the benefit of all reasonable inferences. See *Marx & Co., Inc. v. Diners' Club, Inc.,* 400 F.Supp. 581, 584 (S.D.N.Y.1975); *Simblest v. Maynard, supra* ; *O'Connor v. Pennsylvania RR,* 308 F.2d 911, 914–15 (2d Cir. 1962). See also 5 Moore's Federal Practice § 50.02(1) (2d ed. 1974).

A motion under Fed.R.Civ.P. 50(b) for judgment notwithstanding the verdict is to be granted only where there is an absence of any substantial evidence to support the verdict. See 2B Barron & Holtzoff, *Federal Practice and Procedure* § 1079. If reasonable minds could differ as to the proper outcome, regardless of where the weight of the evidence lies, the essential unanimity required for a judgment notwithstanding the verdict is lacking. See *Arteiro v. Coca Cola Bottling Midwest, Inc.,* 47 F.R.D. 186, 187 (D.Minn.1969).

The jury by its verdict, found that plaintiff's case did not comply with his burden of proving the claim by a preponderance of the believable evidence. That it is within the province of the jury to do so is beyond question:

> "It is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine credibility of witnesses." *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir. 1969); see also *O'Connor v. Pennsylvania RR Co.,* 308 F.2d 911, 915 (2d Cir. 1962).

Plaintiff apparently argues that, in effect, the jury incorrectly interpreted the evidence. Whether or not the jury correctly interpreted the evidence is *not* the appropriate standard for a motion for judgment notwithstanding the verdict. It is not the province of this Court to weigh conflicting evidence or determine the credibility of witnesses. *It is the defendant's (movant's) burden to demonstrate the lack of factual foundation supporting the jury's verdict.*

---

\* Sitting *en banc* the Court in *Boeing* said:
> "On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence— not just that evidence which supports the

non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion." *Id.,* at 374.

*Lavender v. Kurn,* 327 U.S. 645, 652–3, 66 S.Ct. 740, 90 L.Ed. 916 (1946)

■ Essentially, plaintiff's entire case rested upon the credibility of Miceli and Last. In such a case it is inappropriate to direct a verdict or grant judgment notwithstanding the verdict. Cf. *Readnour v. Commercial Standard Insurance Co.,* 253 F.2d 907–08 (10th Cir. 1958).

The jury, as was its right, may have found the credibility of the plaintiff's case lacking. Or, the jury may well have considered that the requisite proof which the law makes imperative had not been adduced. The jury may have been unconvinced by the state of the proof. Such an estimate could have been precipitated by certain aspects of proof adduced: first, the broken wood was never found (Gercken, direct, p. 3); second, eye-witness Last, who allegedly saw plaintiff's foot go through the wood, did not see the foot being extracted from the wood (Last, direct, p. 9); third, the plywood which allegedly broke was at all times in good condition (Miceli, cross, pp. 7, 9); fourth, the plywood had not broken under the weight of cartons of shrimp and continuous passage by a number of men; fifth, the wood flooring had gaps, created by overlapping wood, making it conceivable that plaintiff tripped thereby.

Our estimation of the evidence does not count, for this case was not tried to the court; it was tried before a jury. Certainly we appreciate most emphatically what the court in *Tyrill v. Alcoa Steamship Co.,* 185 F.Supp. 822 (S.D.N.Y.1960), had to say on this score:

"The jury, and not the Court, is the ultimate fact-finding body, and as long as differing conclusions may reasonably be drawn from the evidence, its verdict may not be disturbed." *Id.,* at 825

Accordingly, plaintiff's motion for a judgment notwithstanding the verdict is denied.

■ Plaintiff alternatively asks for a new trial. Such a motion is "addressed to the discretion of the trial court." *Sotell v. Maritime Overseas, Inc.,* 474 F.2d 794, 796 (2d Cir. 1973). As the trial judge presiding we were inclined to believe plaintiff's version of the accident, and his supporting proof. However, we find the jury's verdict in this case to have been reasonable and not without foundation in the evidence. The language of the Court in *Markusen v. General Aniline and Film Corp.,* is instructive on this point:

"The trial judge cannot set aside a verdict merely because, if he were a juror, he would have reached a different result." *Id.,* 16 F.R.D. 455 (S.D.N.Y.1954)

See also, *McLeod v. Union Barge Line Co.,* 95 F.Supp. 366, 369 (W.D.Pa.1951), aff'd 189 F.2d 610 (3d Cir. 1951).

Further, we find particularly relevant what the Circuit Court had to say on this point:

"The practical effect (of the verdict) is that twelve jurors found contrary to the testimony of the three . . . witnesses, and certainly a juror has not only a right but a duty to use his common sense and experience and draw all reasonable inferences from the physical facts. . . ." *Compton v. United States,* 377 F.2d 408, 412 (8th Cir. 1960)

Motion denied in all respects.

SO ORDERED.