2333

Willie MCBETH, Jr., Administrator of the Estate of Alice MCBETH, deceased, Appellant v. TNS MILLS, INC., Respondent.

(458 S.E. (2d) 52)

Court of Appeals

*L. Joel Chastain* and *Desa A. Ballard, Ness, Motley, Loadholt, Richardson & Poole,* Barnwell; and *Pete G. Diamaduros, Whitney, White & Diamaduros, Whitney, White & Diamaduros,* Union, *for appellant.*

*Ellis M. Johnston, II* and *Karen B. Hipp, Haynsworth, Marion, McKay & Guerard,* Greenville, *for respondent.*

Heard Mar. 7, 1995.

Decided Apr. 17, 1995; Reh. Den. May 23, 1995.

GOOLSBY, Judge:

Willie McBeth, Jr., instituted this wrongful death action as administrator of the estate of Alice McBeth against TNS Mills, Inc., alleging TNS Mills negligently failed to provide adequate security at its place of business, which resulted in the death of Alice McBeth, a TNS Mills employee. The jury returned a verdict in favor of TNS Mills and the trial court denied the administrator's motion for a new trial. The administrator appeals several of the trial court's rulings. We affirm.

Shortly after midnight on December 18, 1989, Alice McBeth, an employee on the second shift at TNS Mills, entered the TNS Mills employee parking lot. McBeth had stopped to talk with an acquaintance on the way to her car when she encountered Juanita McCravy. McCravy was not a TNS Mills employee and her presence in the employee parking lot was unauthorized. McCravy was the girlfriend of another TNS Mills employee, Craig Miller. Apparently, McCravy had gone to TNS Mills that night to confront McBeth about McBeth's relationship with Miller and, when McBeth admitted the relationship, McCravy hit and stabbed her. McBeth died of her wounds.

## I.

The administrator first argues the trial court erred in finding TNS Mills gave race neutral reasons for using peremptory strikes against two black jurors.

The Fourteenth Amendment to the United States Constitution prohibits the exercise of peremptory strikes solely on the basis of race. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. (2d) 69 (1986). Both the

United States Supreme Court and the South Carolina Supreme Court have held that this prohibition applies in civil as well as criminal cases. *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed. (2d) 660 (1991); *Chavous v. Brown*, 299 S.C. 398, 385 S.E. (2d) 206 (Ct. App. 1989), *aff'd on remand*, 305 S.C. 387, 409 S.E. (2d) 356 (1991).

To rebut a prima facie case of the unconstitutional use of peremptory strikes, the party whose peremptory strikes have been challenged must provide race neutral explanations for those strikes. *Foster v. Spartanburg Hosp. Sys.*, 314 S.C. 282, 442 S.E. (2d) 624 (Ct. App. 1994). The race neutral explanations must be valid and not merely a pretext. *Id.* The administrator contends the explanation TNS Mills offered for striking one of the black jurors was merely a pretext.

The panel of twenty-three potential jurors included eleven white males, ten white females, and two black females. TNS Mills used its four peremptory strikes to remove both black females, one white female, and one white male from the jury panel. After jury selection, but before the jury was sworn, the administrator moved the court to require TNS Mills to provide race neutral reasons for striking the two black jurors. The trial court granted the administrator's request for a hearing.

At oral argument, counsel for the administrator stated the administrator did not dispute that TNS Mills gave a race neutral reason for striking Deborah Jefferies.

Regarding Isabella Dixon, TNS Mills maintains it did not know the juror was black at the time it exercised the strike. Dixon's race was listed as unknown on her juror information card and on the jury list and there is no indication of her race on the list of strikes. Further, the record does not indicate TNS Mills obtained information about Dixon's race by any other means before deciding to strike her. The administrator alleges TNS Mills conceded Dixon was black at the Edmonson hearing; however, there is no suggestion even in this alleged concession that TNS Mills was aware of Dixon's race before it exercised its peremptory strike against her. Absent ascertainable evidence that TNS Mills was aware of Dixon's race at the time it exercised its peremptory strike, we cannot hold the trial court erred in finding TNS Mill's reasons for striking

here were not racially motivated.

## II.

The administrator also argues the trial court erred in refusing to admit into evidence a security expert's opinion that the assault on Alice McBeth was foreseeable.

The admission of expert testimony is a matter within the sound discretion of the trial court and the trial court's decision on the admission of expert testimony will not be disturbed on appeal absent an abuse of discretion. *Prince v. Associated Petroleum Carriers*, 262 S.C. 358, 204 S.E. (2d) 575 (1974); *Lucas v. Sara Lee Corp.*, 307 S.C. 495, 415 S.E. (2d) 837 (Ct. App. 1992). Expert opinion testimony is proper where it will assist the trier of fact in understanding the evidence or in determining a fact in issue. Rule 43(m)(1), SCRCP. Conversely, expert opinion testimony is generally not admissible when the matter is within the jury's common knowledge or range of experience. *McCown v. Muldrow*, 91 S.C. 523, 74 S.E. 386 (1912); *Scott v. Sears, Roebuck & Co.*, 789 F. (2d) 1052 (4th Cir. 1986); *see* 32 C.J.S. Evidence § 546 (62), at 264 (1964) ("[E]xperts may not testify as to matters of common knowledge or experience. . . .").

The administrator proffered and qualified Lawrence Talley as an expert in premises security. Talley testified extensively regarding what he believed, in his expert opinion, to be TNS mill's failure to provide adequate security. Talley testified he based his opinion on a number of observations, among them TNS mill's failure (1) to have an adequate security plan; (2) to know of all "breach[es] of security" that occurred on the premises over a two year period, including three thefts from vehicles, one act of vandalism, one attempted theft from a vehicle, and two thefts of property; (3) to properly supervise shift changes despite suspicions of disorderly conduct in the parking lot and three prior domestic disturbances, including one occasion when McCravy entered the mill and argued with Miller while he was working, resulting in a plant supervisor asking McCravy to leave the premises; and (4) to properly investigate the disturbance involving McCravy and Miller. The trial court, however, sustained TNS mill's objection to Talley's testimony regarding the foreseeability of the assault on McBeth.

We agree with the trial court that the issue of foreseeability is within the province of the jury. The jury was made fully aware of the prior disturbances at the mill, the security measures routinely exercised on the premises, and Talley's opinion that these security measures were inadequate. Because the jury could, in light of this evidence, make a common sense analysis in determining the issue of foreseeability, we hold expert testimony on this matter was unnecessary. The trial court, then, did not abuse its discretion in excluding Talley's expert opinion regarding foreseeability.

Further, the exclusion of Talley's expert opinion did not prejudice the administrator because, in addition to Talley's testimony that TNS mill's security was inadequate, another expert, Dr. Jack Enter, testified over TNS mill's objection that there was a high probability that the type of incident at issue would occur at TNS Mills.

### III.

Finally, the administrator argues the trial court gave erroneous and confusing jury instructions regarding the law governing a landowner's duty to protect others from the criminal acts of third parties.

The administrator argues the trial court erroneously charged the jury that TNS Mills had no duty to protect McBeth unless it knew or should have known that criminal acts were being committed or were about to be committed on the premises at the time of the assault on McBeth. He asserts the trial court should have charged the jury that an employer is liable if it "knew or should have known that [its]conduct may reasonably be expected to cause harm to [its] employees from the criminal acts of third parties."

We agree with TNS Mills that the trial court's instructions, when read as a whole, clearly include the principle of law the administrator wanted charged. Specifically, we hold the principle that the administrator claims was not included in the trial court's instructions was encompassed in the following charge:

> There are situations in which the owner . . . is required to anticipate and guard against the intentional or even criminal misconduct of others . . . [T]hese situations arise

where the owner is under a special responsibility toward the one who suffers the harm which includes the duty to protect her against intentional misconduct where the owner stands in such a relation to the other that they are under a duty to protect her against such misconduct. Among such relations are those of employer and employee.

Now, since and owner is not ordinarily an insurer of safety it is ordinarily under no duty to exercise any care unless they know or have reason to know that the acts of a third person are occurring or are about to occur. If the place or character of the business or past experience is such that they should reasonably anticipate careless or criminal conduct on the part of third persons either generally or at some particular time they may be under a duty to take precautions against it and to afford reasonable protection.

The administrator also complains the trial court erred in failing to charge certain provisions of Comment (f) to the Restatement (Second) of Torts § 344 indicating knowledge may be imputed to a landowner who has reason to know from past experience that there is a likelihood that criminal acts may occur on his property and that a landowner may be under a duty to provide a reasonable number of servants to afford reasonable protection. Without deciding whether this issue was properly preserved for appeal, we hold the charge quoted above included the substance of the requested charge. *See Merritt v. Grant*, 285 S.C. 150, 157, 328 S.E. (2d) 346, 350 (Ct. App.), *cert. denied*, 286 S.C. 125, 333 S.E. (2d) 569 (1985) ("Where the general instructions are sufficiently broad to enable the jury to understand fully the law of the case and the issues involved, the trial judge commits no error in refusing to give a requested instruction.").

Regarding the administrator's argument that the trial court's charge was "confusing," we hold the trial court did not err in charging the jury on two different standards of care. It is the trial court's function to charge the jury on the applicable law and the trial court here correctly charged the jury on the law concerning standards of care. *See, e.g., Singletary v. South Carolina Dep't of Educ.*, 316 S.C. 153,

447 S.E. (2d) 231 (Ct. App. 1994) (a trial court has the duty to give jury instructions that correctly state the law applicable to the issues and the evidence). The question of which standard of care applies, however, depends on the particular fact situation. The jury must determine the facts based on the evidence before it and then it must apply the law that these facts impose on the litigants. *See, e.g., Day v. Kilgore,* — S.C. —, 444 S.E. (2d) 515 (1994) (the jury's proper role is that of the ultimate finders of fact); *Stallings v. Ratliff,* 292 S.C. 349, 353, 356 S.E. (2d) 414, 417 (Ct. App. 1987) ("Breach of duty is a fact question to be decided by the jury on the evidence presented in each case."). The trial court's instructions made it clear to the jury the two potential standards of care and what fact situations would trigger the application of each standard of care.

### IV.

Because we affirm the decision of the trial court, we do not reach TNS mill's argument that the trial court should have granted its directed verdict motion.

Affirmed.

SHAW, J., and HOWARD, Acting J., concur.