2450

David DALON, Respondent v. GOLDEN LANES, INC., Appellant.
(466 S.E. (2d) 368)

Court of Appeals

---

*N. Heyward Clarkson, III, Gibbes & Clarkson,* Greenville, *for appellant.*

*H.W. Pat Paschal, Jr.,* and *Symmes W. Culbertson,* Greenville, *for respondent.*

Heard Dec. 6, 1995.

Decided Jan. 22, 1996.

CURETON, Judge:

This negligence appeal arises out of a fight between two patrons, David Dalon and Tommy Carroll, on the premises of Golden Lanes, Inc. The jury returned a verdict in favor of Dalon against Golden Lanes in the amount of $26,000. The court denied Golden Lanes' motions for a directed verdict, judgment notwithstanding the verdict, and a new trial. we affirm.

Dalon was a business invitee on the premises of Golden Lanes on November 8, 1989. He was attacked and stabbed by Tommy Carroll, another business patron, while on Golden Lanes' premises. Dalon claims Golden Lanes was negligent in

failing to make its property safe for business invitees. In its answer, Golden Lanes admitted Carroll stabbed Dalon on the premises, but denied it was negligent in any way. Golden Lanes also claimed Dalon was contributorily negligent. Golden Lanes further alleged it owed no duty to Dalon to guard against the criminal acts of third parties when it did not know or have reason to know that such criminal conduct was occurring or about occur on the premises.

After presentation of the evidence, Golden Lanes moved for a directed verdict on the ground it had no reason to foresee that there would be a stabbing on its premises and that its security guard would have prevented the assault if Dalon had not left the security guard's presence. The court denied the motion. Prior to closing arguments, the parties discussed jury charges. The court advised it was going to charge negligence and proximate cause as well as the duty of a business owner to provide reasonably safe premises. There was no specific discussion regarding contributory negligence. After the judge charged the jury, counsel for Golden Lanes objected to the court's failure to charge contributory negligence. The court noted it had read the complaint and did not pick up contributory negligence as a defense during trial of the case although it was alleged in the answer. Counsel for Golden Lanes admitted he did not give the court a written request to charge on contributory negligence. The court refused to charge further on the issue and note it may have overlooked that fact that contributory negligence was an issue. After the jury verdict, Golden Lanes made a motion for a JNOV and alternatively for a new trial based on the court's failure to charge contributory negligence. The court issued a written order denying both motions concluding no reasonable jury could find contributory negligence because of Dalon's status as a minor and application of the sudden peril doctrine.

## I.

Golden Lanes argues the court erred in denying its directed verdict motion because there was no evidence the actions of Carroll were foreseeable and therefore it had no duty to protect Dalon from the unforeseeable criminal acts of a third party. Further, if it had a duty to protect Dalon, there was no evidence it breached that duty.

In deciding motions for directed verdict and judgment
notwithstanding the verdict, the evidence and all rea-
sonable inference must be viewed in the light most fa-
vorable to the nonmoving party. If more than one inference
can be drawn from the evidence, the case must be submitted
to the jury. *Crossley v. State Farm Mut. Auto Ins. Co.*, 307
S.C. 354, 415 S.E. (2d) 393 (1992); *First Union Mortgage Corp.
v. Thomas*, 317 S.C. 63, 451 S.E. (2d) 907 (Ct. App. 1994).

Golden Lanes is an entertainment center which provides
bowling, skating, batting cages, video games, go-carts, and a
par-three golf course for its patrons. On the night in question,
Dalon and some friends went to Golden Lanes to hit baseballs
in the batting cages. During the course of the evening, Dalon
and his friends struck up a conversation with several young
women who were at the bowling alley. Dalon testified they
were outside in the parking area when Carroll and some of his
friends came by and made vulgar remarks to the young
women. The girls responded that the boys would take up for
them. Carroll turned around and came up to Dalon. Dalon
stated he could smell alcohol on Carroll. At that point, Carroll
verbally challenged Dalon and head-butted him in the nose. A
fight ensued between Dalon and Carroll. During the course of
the fight, Carroll told Dalon he was going to cut his throat. A
security guard from Golden Lanes came outside and broke up
the fight. Dalon testified the security guard spoke to Carroll
by name and told him to go inside. Dalon stated Carroll again
threatened to cut his throat in the presence of the security
guard. Carroll went inside the bowling alley, and the security
guard began talking to Dalon about what happened. Dalon
stated Carroll came back outside a minute later and began
yelling for him. The security guard told Carroll to go back in-
side. Carroll pulled out a knife and came at Dalon. At that
point, Dalon ran from the presence of the security guard into
the bowling alley. Carroll followed and stabbed him. During
the entire time, Dalon testified he was yelling for help but no
one from Golden Lanes assisted him, even after he was
stabbed.[1]

---

[1] The officer on duty that night testified he broke up the initial fight between
Dalon and Carroll and sent Carroll inside the building. He did not send any-
one with Carroll because he was the only officer working that night. When
Carroll came back outside, the officer heard him yell he was going to cut

Golden Lanes employed deputy sheriffs from the Greenville County Sheriff's Office as security personnel. Officer Harold Nichols worked as head of security. He testified Carroll's mother was employed at the snack bar and his sister was engaged to the manager of the bowling center. Carroll had previously been placed on trespass notice by security personnel because he had caused trouble with other youths in the game room and had been intoxicated several times. Carroll had been allowed to return to Golden Lanes by the management. Officer Nichols testified there had never been a stabbing or assault with a deadly weapon at Golden Lanes.

A business owner owes his invitees a duty to exercise reasonable care to protect them. However, he is generally not charged with the duty to protect his customers against criminal attacks by third parties unless he knows or has reason to know that criminal acts were occurring or were about to occur. *Bullard v. Ehrhardt*, 283 S.C. 557, 324 S.E. (2d) 61 (1984); *Shipes v. Piggly Wiggly St. Andrews, Inc.*, 269 S.C. 479, 238 S.E. (2d) 167 (1977); *Callen v. Cale Yarborough Enterprises*, 314 S.C. 204, 442 S.E. (2d) 216 (Ct. App. 1994), *cert. denied*, order dated Oct. 20, 1994.

In his brief, Dalon asserts he does not hold Golden Lanes responsible for the initial assault by Carroll, but rather contends it was the failure to exercise reasonable care by interceding or controlling Carroll after the initial attack that proximately resulted in the injury he sustained during the second fight. As phrased by Dalon, the issue is not "the provision of security; the issue is that once it provided security, it did so in a negligent manner." Viewing the evidence in the light most favorable to Dalon, Golden Lanes was aware of Carroll's apparent propensity to cause trouble and had permitted him to return to its premises despite the trespass notices issued by its security personnel. The officer on duty broke up the initial fight between Dalon and Carroll and heard Carroll threaten to cut Dalon's throat. Rather than escort Carroll from the scene, the officer sent him back inside the bowling alley and began to question Dalon. Carroll re-

---

Dalon's throat. The officer stated he told Carroll to go back inside, and he pulled his service revolver. Dalon ran from his presence into the bowling alley and the officer followed. He found Dalon in the bowling alley after he had been stabbed by Carroll.

turned with his knife and events led to the stabbing of Dalon. There is more than one reasonable inference to be drawn from the evidence in this case as to whether Golden Lanes exercised reasonable care in providing security under the circumstances given its specific knowledge about Carroll's past conduct. *See Abrams v. Wright*, 262 S.C. 141, 202 S.E. (2d) 859 (1974) (summary judgment should be granted only where it is clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify application of the law); *accord Gardner v. Campbell*, 257 S.C. 209, 184 S.E. (2d) 700 (1971). We find no error in the denial of the motion for a directed verdict.

## II.

Golden Lanes argues the court erred in failing to charge contributory negligence and, therefore, it is entitled to a new trial. We disagree.

Golden Lanes alleged contributory negligence as an affirmative defense in its answer.[2] During trial, Dalon testified he fled from the presence of the security guard in the parking lot and into the bowling alley where he was stabbed. In closing argument, counsel for Golden Lanes argued the security officer had matters under control and nothing would have happened if Dalon had not run away from the guard into the bowling alley. Although Golden Lanes did not submit a written request to charge, it did object to the court's failure to charge contributory negligence immediately after the jury was charged and before the jury retired to consider its verdict.

It is the trial court's function to charge the jury on the applicable law as raised by the pleadings and supported by the evidence. *McBeth v. TNS Mills Inc.*, 318 S.C. 388, 458 S.E. (2d) 52 (Ct. App. 1995); *Ellison v. Parts Distributors Inc.*, 302 S.C. 299, 395 S.E. (2d) 740 (Ct. App. 1990). In order to warrant reversal for failure to give a requested charge, the refusal must be both erroneous and prejudicial. *Id; McCourt by and through McCourt v. Abernathy*, 318 S.C. 301, 457 S.E. (2d) 603 (1995).

[2] The incident occurred on November 8, 1989. This was before the court's prospective adoption of comparative negligence for causes of action arising on or after July 1, 1991. *Nelson v. Concrete Supply Co.*, 303 S.C. 243, 399 S.E. (2d) 783 (1991).

Dalon contends Golden Lanes is precluded from complaining about the court's refusal to charge contributory negligence because it did not comply with Rule 51, SCRCP, inasmuch as it did not file a written request to charge. Rule 51 provides that "[a]t the close of the evidence . . ., any party *may* file written requests that the court instruct the jury on the law as set forth in the requests." (Emphasis ours.) Rule 51 is identical to the federal rule, and this court has resorted to treatment of the federal rules for guidance in interpreting our rules. *Bellamy v. Payne*, 304 S.C. 179, 403 S.E. (2d) 326 (Ct. App. 1991). While federal courts have held that a request to charge is not *per se* invalid because it in not in writing, *Winstead v. Hildenbrand*, 159 F. (2d) 25 (D.C. App. 1946), they have held oral requests to charge made after the jury has been charged comes too late. *Ivy v. Security Barge Lines, Inc.*, 585 F. (2d) 732, 740 (5th Cir. 1978), *modified on other grounds*, 606 F. (2d) 524 (5th Cir. 1979); *Pinto v. States Marine Corp. of Delaware*, 296 F. (2d) (2nd Cir. 1961); *Seeraty v. Philadelphia Coca-Cola Bottling Co.*, 198 F. (2d) 264 (3rd Cir. 1952); *See* 9A Wright & Miller, *Federal Practice and Procedure:* Civil 2d § 2552 (1995). Nevertheless, the trial court's discretion to refuse a charge because it is not timely requested should be sparingly and cautiously exercised. *Wilson v. Southern Farm Bureau Cas. Co.*, 275 F. (2d) 819 (5th Cir. 1960), *cert denied*, 364 U.S. 817, 81 S.Ct. 49, 5 L.Ed. (2d) 48.

While Rule 51 contains permissive language with respect to the timing of the filing of a request to charge, and does not specifically bar a request to charge that is made after the jury is charged, we hold the trial court did not, under the circumstances of this case, abuse its discretion in failing to charge contributory negligence. The trial court held a charge conference and announced to the parties the substance of his intended jury charge. There was no mention of contributory negligence. Moreover, there was no specific mention of it by either counsel to the jury. In rejecting Golden Lanes' objection to the charge, the trial court stated, "I will note your objection, but I didn't pick up during the entire trial that [contributory negligence] was a defense. . . ." Even at this point, counsel for Golden Lanes did not propose any specific instruction on contributory negligence.

The primary purpose of Rule 51 is to permit counsel to argue to the jury intelligently upon the evidence, within the framework of the applicable law, and to deal with the issues to be placed before the jury. *Frederic P. Wiedersum Associates v. Nat'l Homes Constr. Corp.*, 540 F. (2d) 62 (2nd Cir. 1976); *Tyrill v. Alcoa Steamship Co.*, 185 F. Supp. 822, 824 (S.D.N.Y. 1960). Golden Lanes' failure to timely request the contributory negligence charge may have led Dalon's counsel into believing contributory negligence was not an issue and could have colored the content of his closing arguments. As Dalon points out in his brief, had the trial court amended his charge to include contributory negligence after closing arguments, he would have been unfairly prejudiced in that he would not have had the opportunity to argue to the jury against application of contributory negligence. We therefore find no abuse of discretion by the trial judge in overruling Golden Lanes' objection to the jury charge.

Golden Lanes also contends the court erred in failing to grant a new trial based on its failure to charge contributory negligence. In its order denying Golden Lanes' motion for a new trial, the trial court ruled contributory negligence was not an issue in the case because Dalon was a minor and the sudden peril doctrine applied. Dalon was approximately sixteen years old when the incident occurred. Since Dalon was over fourteen years of age, his conduct was to be judged by an adult standard of care as opposed to that of a minor. *McCormick v. Campbell*, 285 S.C. 272, 329 S.E. (2d) 752 (1985). Additionally, application of the sudden peril doctrine is ordinarily an issue for the jury to decide under the particular facts of each case. *See Young v. Livingston*, 247 S.C. 385, 147 S.E. (2d) 624 (1966). Nevertheless, in light of our holding that the trial court did not abuse its discretion in refusing to charge contributory negligence, we are also constrained to hold no error in denying the motion for a new trial.

Accordingly, the order of the trial court is

Affirmed.

HOWELL, C.J., concurs.

GOOLSBY, J., concurs in separate opinion.

GOOLSBY, Judge (concurring):

I concur in the result reached by the majority. On the issue of whether the trial court should have instructed the jury regarding contributory negligence, which is treated in Part II, I would hold there is no evidence to warrant the conclusion that David Dalon was contributorily negligent. I see nothing contributory negligence about Dalon's leaving the security officer's presence because, as Golden Lanes argues and the majority points out, "the security officer had matters under control." If the security officer had matters under control, then it made no difference that Dalon chose to leave the security officer's presence and went inside the bowling alley.