MARX & CO., INC., et al., Plaintiffs,

v.

The DINERS' CLUB, INC., et al.,
Defendants,

v.

William D. FUGAZY and Louis V. Fugazy,
Third-Party Defendants.

William D. FUGAZY and Louis V.
Fugazy, Plaintiffs,

v.

The DINERS' CLUB, INC., et al.,
Defendants,

Marx & Co., Inc., et al., Additional Defendants on the Counterclaims.

Nos. 70 Civ. 3064, 72 Civ. 4324.

United States District Court,
S. D. New York.

Sept. 23, 1975.

582

Harris, Fredericks & Korobkin and Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for plaintiffs; Barry I. Frederciks, James E. Tolan, New York City, of counsel.

Hardee, Barovick, Konecky & Braun, New York City, for defendants; Joseph J. Santora, Robert B. Kay, Robert B. McKay, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiffs commenced these actions in 1970 and 1972, respectively, alleging, *inter alia*, that defendant The Diners' Club, Inc. ("Diners'") breached a contract to register certain unregistered Diners' stock held by them. In addition, plaintiffs asserted two claims alleging violations of § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), and Rule 10b–5 promulgated thereunder. Defendants denied plaintiffs' allegations and asserted various counterclaims. Following a trial which began on May 6, 1975 and concluded on May 28, 1975, the jury returned a verdict for plaintiffs on their contract claim and on defendants' counterclaims, awarding a total of $533,000 in damages on the former. The Court dismissed one of the plaintiffs' § 10(b) claims at the end of their case and the jury returned a verdict for defendants on the other § 10(b) claim.

Diners' moves pursuant to Rules 50 and 59, Fed.R.Civ.P., for judgment notwithstanding the verdict on plaintiffs' contract claim or, in the alternative, for a new trial or remittitur. In addition, defendants Diners' and Diners' World Travel, Inc., formerly known as Diners'/Fugazy Travel, Inc. ("DWT") move for judgment notwithstanding the verdict and a new trial with respect to their counterclaims.

Defendants base their motion for judgment notwithstanding the verdict on the grounds that plaintiffs failed to produce sufficient evidence to meet their burden of proof; that the verdict of the jury necessarily involved an erroneous determination of law; and that the evidence was overwhelmingly in their favor. A new trial is sought on the grounds that the verdict is contrary to the weight of the evidence; and that the Court made prejudicial errors in its rulings during trial, principally in permitting Stanley Friedman, a witness not identified in the pre-trial order, to testify as a rebuttal witness. A new trial or remittitur is sought on the ground that the jury made an erroneous determination of plaintiffs' damages. For the reasons set forth below, the motions are in all respects denied.

The facts, briefly, are these. Under an agreement dated October 10, 1967, Diners' acquired the assets of Fugazy Travel Bureau for unregistered Diners' stock and other consideration. Paragraph 10.2(b) of the agreement provided that Diners', upon receipt of notification from plaintiffs that they desired registration, would promptly file a registration statement for the unregistered Diners' stock held by plaintiffs and would use its best efforts to cause the registration statement to become effective.[1]

On April 16, 1969, plaintiffs wrote a letter requesting Diners' to file a regis-

I. Paragraph 10.2(b) provides:

If Diners shall not have filed any such registration statement subsequent to January 1, 1968 and before January 1, 1969, then, provided there are outstanding more than 25,000 shares bearing legend provided for in Section 10.1(c) hereof, the registered holders thereof (but not less than all of them) may, at any time after January 1, 1969, notify Diners that they desire that Diners file such a registration statement, but only with respect to all such shares then owned by all such holders. Unless Diners shall have received an opinion from its counsel that registration is not required, or if Diners and all such registered holders, together proceeding expeditiously and in good faith after such notice, cannot obtain from the Securities and Exchange Commission a "no-action" letter with respect to the sale of such shares, then Diners shall promptly file a registration statement and use its best efforts to cause such registration statement to become effective. Diners may include in such registration statement such other of its securities as it may desire. Anything to the contrary notwithstanding, Diners need not file any such registration statement until it may lawfully use its regularly prepared fiscal year end financial statements, as a part of such registration statement. The notifying holders shall pay Diners in advance an amount sufficient to reimburse Diners for one-half of all registration fees, printing costs, au-

tration statement with respect to their Diners' stock. Instead of directing the preparation of a registration statement, George Faunce, then president of Diners', forwarded a copy of plaintiffs' letter containing the following notation to Harold Johnson, one of its directors, and executive vice president of The Continental Insurance Company ("Continental") which held a controlling interest in Diners':

> "Harold—Alfred [Bloomingdale, Diners' board chairman] asked me to send this to you and [Victor] Herd [Continental's board chairman]. He wants to know your position–
>
> George"

A letter dated April 24, 1969 from Johnson to Herd enclosing a copy of the April 16, 1969 request contained the following statement:

> "The attached letter, I believe, is an effort on the part of Otto Marx, Jr. to have Continental purchase his shares.
>
> "To my way of thinking *there is nothing that needs to be done at the present time.* Mr. Bloomingdale may discuss this at a later date but *my reaction is to do nothing.*"

(emphasis added)

Although Diners' was requested to file a registration statement in mid-April, 1969, it is undisputed that Diners' did nothing to register the stock until late July, 1969, more than three months after receiving the letter requesting registration and almost two months after its financial statement for the fiscal year

ended March 31, 1969 became available. From the foregoing, the jury could reasonably infer that Diners', with the urging and approval of Herd and Johnson, decided to do nothing and thereby avoid its obligations under paragraph 10.2(b) of the agreement.

It is clear that the motion for judgment notwithstanding the verdict on the ground that it is against the weight of the evidence and that the verdict of the jury necessarily involved an erroneous determination of law must be denied. The standard on such a motion is the same as the standard for a directed verdict, that is, whether there was evidence from which the jury could have properly found for plaintiff, against whom the motion is made, viewing the evidence most favorable to him and giving him the benefit of all reasonable inferences. 9 Wright and Miller, Federal Practice and Procedure § 2524 (1971); *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir. 1970). Viewed in this light, the evidence presented was certainly sufficient to permit the case to go to the jury.

Plaintiffs presented sufficient evidence to make out a prima facie case that Diners' had breached its agreement by failing to promptly file a registration statement.[2] Preparation of the registration statement did not begin until late July, 1969 and it was not filed until August 28, 1969. Although Diners' argued that it used its best efforts to cause the registration statement to become effective, it never became effective, having been withdrawn early in 1970 over the protest of plaintiff Marx.

diting fees (but only in excess of normal fees paid by Diners for its fiscal year end audit), legal fees and all other incidental out-of-pocket expenses incurred in connection with such registration statement.

2. Diners' appears to argue that plaintiffs' contract claim was limited to Diners' failure to exercise its best efforts to cause the registration statement to become effective. It contends that the claim did not take the form in which it was submitted to the jury until plaintiffs presented their rebuttal evidence. In fact, from the outset of the trial

plaintiffs contended that Diners' breached the October 10, 1967 agreement both in the failure to promptly file a registration statement and the failure to use its best efforts to cause the registration statement, ultimately filed, to become effective. In light of the numerous instances throughout the trial in which the contract claim was outlined by the plaintiffs and the Court, and Diners' agreement to the form of the special verdict submitted to the jury, Diners' belated argument that only the failure to use "best efforts" was in issue must be deemed an afterthought.

At trial Diners' contended, and contends on these motions, that it was not responsible for the delay in filing but rather that the delay was occasioned by plaintiffs' failure to perform the conditions precedent to Diners' obligation to file. Diners' contends that its obligation to register plaintiffs' shares was subject to receipt of an amount sufficient to reimburse it for one-half of all registration expenses and delivery by plaintiffs of an indemnity agreement. Further, Diners' argues that upon receipt of the registration request it had two other performance options under the agreement, either of which could be pursued in lieu of registration.

██ Although it is ordinarily true, as Diners' argues, that a plaintiff must prove as an element of his cause of action for breach of contract the due performance by him of all conditions precedent, *see, e.g., Marine Trust Co. of Buffalo v. Gilfillan,* 258 App.Div. 296, 17 N.Y.S.2d 107 (4th Dep't 1939); 3A A. Corbin, On Contracts § 628, at 16 (1960), it is equally well-settled that a party cannot insist upon a condition precedent when he himself has caused its nonperformance. *Wagner v. Derecktor,* 306 N.Y. 386, 118 N.E.2d 570 (1954). From the evidence adduced at trial, the jury could have reasonably determined that upon receipt of plaintiffs' request Diners' did nothing. It failed to elect from among the options for performance available to it under the agreement and did not request a specific amount from plaintiffs representing one-half the registration costs until July 15, 1969, well after the registration statement should have been filed. Further, the sum finally requested was considerably in excess of the reasonable expenses to be incurred. It was not until August, 1969 that Diners' even raised the question of plaintiffs providing the indemnity agreement, although in the April 16, 1969 letter plaintiffs offered to provide one in accordance with the terms of the October 10, 1967 agreement. From all these facts, the jury could have reasonably concluded that Diners' acted in bad faith and thereby prevented or hindered performance of the conditions precedent in order to avoid its obligation to file a registration statement.

██ Moreover, Diners' contentions were covered in the Court's charge without objection by defendants. Rule 51, Fed.R.Civ.P., specifically provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." A party cannot resurrect such an objection on a motion for judgment notwithstanding the verdict. *Jennings v. Boenning & Co.,* 388 F.Supp. 1294, 1303–04 (E.D. Pa.1975); *see Cohen v. Franchard Corp.,* 478 F.2d 115 (2d Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L. Ed.2d 106 (1973).

██ Diners' also argues that the parties entered an accord on August 27, 1969, thereby precluding plaintiffs from asserting any claim based on whatever superseded obligation Diners' may have had. Rule 8(c), Fed.R.Civ.P., requires that an accord be affirmatively pleaded, which does not appear to have been done.[3] Diners' attempt to assert this affirmative defense after trial must be rejected.

██ Defendants also move for a new trial on the ground that the verdict was against the weight of the evidence. The standard by which evidence is judged on a motion for a new trial is less stringent than upon a motion for judgment notwithstanding the verdict. However, determination of that motion rests within the sound discretion of the trial court to see that there is no miscarriage of justice. 6 A. Moore's Federal Practice ¶ 59.08[5] (1972). As discuss-

3. See amended answer filed January 28, 1971 (70 Civ. 3064); and answer and counterclaims filed January 15, 1973 (72 Civ. 4324).

██

ed above, there was sufficient evidence to warrant submission of the case to the jury. Upon review of the probative evidence in the case, together with the inferences which the jury could reasonably have drawn therefrom, and evaluating all the testimony, the Court is persuaded that the jury's verdict was neither unsupported by the evidence, nor against "the right and justice of the case." Wright and Miller, *supra*, § 2531.

 Defendants raise additional claims of error, arguing that there were occurrences at the trial which were sufficiently grave and had consequences so prejudicial that these errors require a new trial. These claims revolve around the Court's permitting plaintiffs to call Stanley Friedman, a witness not named in the pre-trial order, as a rebuttal witness over defendants' objection.[4]

First, defendants contend that Friedman was a surprise witness and that they were, therefore, unable to prepare for his cross-examination. This contention is without merit. It was within the Court's discretion to permit Friedman to testify and the fact that he was not listed in the pre-trial order, standing alone, does not warrant a new trial. *See Stewart v. Meyers*, 353 F.2d 691 (7th Cir. 1965). Plaintiffs' counsel supplied defendants with Friedman's name and the subject on which he would testify as an expert witness one week before he was called to testify. Within that week there were two full weekdays, in addition to the weekend, during which no proceedings were had in the trial. There was, thus, sufficient notice to defendants to enable them to prepare for Friedman's testimony. Moreover, at no time did defendants' counsel request a

continuance to prepare for cross-examination or to obtain their own expert. In light of all the facts and circumstances, no substantial injustice resulted from permitting Friedman to testify.

 Defendants next contend that although it may have been proper for Friedman to testify on plaintiffs' direct case, it was error to permit him to testify on rebuttal. It was within the discretion of the Court to permit expert testimony on rebuttal. *See Sanchez v. Safeway Stores, Inc.*, 451 F.2d 998 (10th Cir. 1971); *Casey v. Seas Shipping Co.*, 178 F.2d 360 (2d Cir. 1949). Diners' defense to plaintiffs' contract claim was that it had no duty to file the registration statement until August and that its duty was fully discharged by the actions taken. Mr. Friedman gave his opinion, in rebuttal, that a registration statement should have been filed by June 20, 1969 and become effective by the end of August, 1969. Accordingly, it was not error to permit him to testify on rebuttal.

 Nor was it prejudicial error to allow Friedman, an expert witness, to give his opinion as to when the registration statement should have been filed or the time within which the registration statement should have become effective or to allow him to testify in reliance on the 1970 SEC Annual Report. The admission of Friedman's expert testimony, subject to the limiting instructions given at trial, was a proper exercise of the trial court's discretionary power over the progress of the trial. *United States v. Cohen*, 518 F.2d 727 (2d Cir. 1975).

 Diners' also argues that the jury made an erroneous determination of plaintiffs' damages. The Court having found that the jury's verdict was

---

4. The trial transcript does not reflect that defendants objected to the calling of Mr. Friedman. Defendants have applied to the Court to correct the record to note their objection. It is the Court's recollection that at a conference between counsel and the Court, after the jury had left the courtroom, plaintiffs' counsel indicated his intention to call an expert witness on his rebuttal case. Counsel for defendants objected to the call-

ing of a witness not listed in the pre-trial order. The Court, after requiring plaintiffs' counsel to name the rebuttal witness, overruled counsel's objection and indicated he could testify. Mr. Friedman testified one week later. Inasmuch as the conference does not appear to have been transcribed, the record is deemed corrected to reflect defendants' objection and the Court's ruling.

neither unsupported by the evidence nor against "the right and justice of the case," and no objection having been taken to the Court's charge on damages, one of the alternative measures of damages being the damages award by the jury, this argument must be rejected.

 Finally, defendants contend that the plaintiffs' verdict on their counterclaims was against the weight of the evidence. The primary claim pressed on this motion is that plaintiffs maintained an interest in Travelco, Inc. ("Travelco"), undisclosed to defendants, in violation of the October 10, 1967 agreement and their fiduciary responsibilities. At trial, the evidence produced on behalf of defendants tended to establish that plaintiffs had agreed prior to Diners' acquisition of Fugazy to indemnify the purchaser of their interest in Travelco in the event he was held liable on a guarantee of a bank loan to the corporation. Additionally, plaintiffs had an option to purchase a controlling interest in Travelco in the event the bank loan was repaid. The Fugazy's were, also, officers and directors of Travelco.

Plaintiffs denied retaining any interest in Travelco and testified that they had fully divested themselves of all interests, direct or indirect, by October 30, 1967. Evidence introduced by plaintiffs tended to establish that the terms of the Travelco transaction were disclosed to defendants. Further, they testified that the management services contract between Fugazy Travel Bureau and Travelco and the nature of the business required the Fugazy's to remain officers and directors of Travelco. They further testified, without contradiction, that they were officers and directors of many Fugazy franchises and that this was known to defendants. It is undisputed that the management services contract was disclosed to defendants at the time of Diners' acquisition of Fugazy.

The jury chose to believe plaintiffs. All the evidence was presented and counsel for defendants ably made the same arguments to the jury as he now makes to this Court. Moreover, defendants concede that the jury was correctly charged on the law. Defendants bore the burden of persuasion and it cannot be said that the jury's verdict was without support in the evidence. The portion of defendants' motion which seeks a new trial on their counterclaims is, accordingly, denied.

The Court has considered the other arguments which defendants advance and finds defendants' contentions to be without merit. Therefore, the motions are in all respects denied.

It is so ordered.