**In re John P. GALANIS, Debtor.**

**Arthur J. GERSTL, Interim Trustee, Plaintiff,**

**v.**

**John P. GALANIS; Milton I. Schwartz; Misco, Inc.; Armstrong Capital, S.A.; and Dayton Company, Inc., Defendants.**

**ARMSTRONG CAPITAL, S.A., Plaintiff,**

**v.**

**FEINER, CURTIS, SMITH AND GOLDMAN, et al., Defendants.**

**Bankruptcy No. 5–80–00302. Adv. Nos. 5–85–0024, 5–85–0025. Civ. Nos. B–85–40(EBB), B–79–43(TFGD).**

United States Bankruptcy Court, D. Connecticut.

April 2, 1987.

Paul R. Grand, Diana Parker, Grand & Ostrow, New York City, for John P. Galanis.

William A. Phillips, More, Phillips & Hull, P.C., Greenwich, Conn., John C. Klotz, New York City, for Armstrong Capital, S.A.

## MEMORANDUM OF DECISION

ALAN H.W. SHIFF, Bankruptcy Judge.

### I

### BACKGROUND

#### A

The matter before the court is an interpleader action to determine the competing claims of John Peter Galanis ("Galanis"), Armstrong Capital, S.A. ("Armstrong"), Milton I. Schwartz and Misco, Inc. (Schwartz/Misco"), and the Dayton Company ("Dayton") to property held by the plaintiff upon dismissal of an involuntary Chapter 7 petition which had been filed in this court against Galanis by Chase Manhattan Bank, N.A. on May 1, 1980. The plaintiff, Arthur Gerstl, was appointed interim trustee ("trustee") in that bankruptcy case, and in that capacity, on October 1, 1980, instituted an adversary proceeding against Schwartz/Misco[1] to recover property allegedly belonging to Galanis's estate from the sale of Park City C.A.T.V. Associates, a Utah limited partnership, in which Galanis was the sole general partner. On April 28, 1981, Bankruptcy Judge Robert L. Krechevsky[2] entered an order that the estate was entitled to a fifty per cent interest in the net proceeds of the sale beyond the defendants' recovery of their capital outlay.

The defendants appealed and the plaintiff cross-appealed Judge Krechevsky's decision. Thereafter, the parties entered into a settlement, and on August 26, 1982, this court entered a stipulated order for judgment pursuant to which Schwartz/Misco and Park City C.A.T.V. Associates paid the trustee $240,000.00 plus interest from December 1, 1981 (the "settlement fund"),

---

1. *In re Galanis,* Chapter 7, Case No. 5–80–00302, Adv. No. 2–80–0417 (Bankr.D.Conn.).

2. The office of the bankruptcy judge at Bridgeport, Connecticut was vacant at the time the trustee's complaint was filed. Therefore, the United States Bankruptcy Court at Hartford, Connecticut heard this matter.

which represents a substantial portion of the interpleader fund at issue here. Under the terms of that order, the settlement fund was subject to a $170,000.00 lien in favor of Schwartz/Misco as security for their unliquidated claims alleged against Galanis, which amount was to be remitted to them in the event the involuntary petition against Galanis was dismissed. The stipulated order further provided that if such dismissal occurred,

> nothing contained in this settlement order shall be construed as a waiver of the rights of John P. Galanis, outside of bankruptcy, to pursue Milton I. Schwartz and Misco, Inc. to recover in his favor against said parties, to the extent of the lesser of the amount of his proveable [sic] claim outside of bankruptcy or the remaining settlement fund paid by the Trustee to Milton I. Schwartz and Misco, Inc., pursuant hereto.

On November 9, 1984, this court granted Galanis's motion for dismissal of the involuntary petition for failure to prosecute, pursuant to Code § 303(j)(3),[3] and ordered that, following court approval of the final accounting and applications for professional and other fees, "the balance of all assets of this estate [exclusive of Schwartz/Misco's interest established under the August 26, 1982 order] shall be paid to and revest in the debtor."[4] However, prior to any distribution to Galanis or Schwartz/Misco, two claims were made against those assets.

First, on December 18, 1984, Armstrong caused an execution, issued by the United States District Court for the District of Connecticut, to be personally served on the trustee[5] in an attempt to levy upon Galanis's personal property to satisfy a $510,-579.00 judgment entered in its favor against Galanis on June 10, 1976 by the United States District Court for the Southern District of New York, *Armstrong Capital, S.A. v. Feiner, Curtis, Smith and Goldman, et al,* Index No. 74 Civ. 3154 (the *"Feiner"* action). Armstrong had docketed that judgment in the United States District Court for this District on June 18, 1979 (Misc.Civ. B–79–43).[6] The trustee did not surrender the funds in his possession, but acting in compliance with Connecticut Public Act No. 83–581, Sec. 9(a)(4)(C)[7], initiated the procedures required to give notice to Galanis that an execution had been served on him.

Second, on or about December 21, 1984, the trustee was served with an *ex parte* order issued in favor of Galanis by the Connecticut Superior Court, Judicial District of Stamford/Norwalk to garnish $170,000.00 in the trustee's possession. That order was obtained in connection with

---

**3.** 11 U.S.C. § 303(j)(3) provides in pertinent part that

> (j) Only after notice to all creditors and a hearing may the court dismiss a petition filed under this section—
> (3) for want of prosecution.

**4.** It is clear from the subsequent conduct of the parties, as discussed *infra,* that Schwartz/Misco's interest was not to be included in the assets ordered revested in Galanis.

**5.** Armstrong's execution was personally served on Galanis on December 17, 1984.

**6.** Under 28 U.S.C. § 1963, a certified copy of a judgment entered by a United States District Court which has become final by appeal or expiration of time for appeal may be filed in any other district court. Upon registration, the judgment has the same effect as a judgment entered by the district court in which it is registered.

**7.** Conn.Gen.Stat. § 52–356a(a)(4)(C)(1985) provides that:

> [w]ith respect to a judgment debtor who is a natural person, if such personal property, including any debt owed, is in the possession of a third person, the levying officer shall serve that person with two copies of the execution, required notices and claim forms. On receipt of such papers, the third person shall forthwith mail a copy thereof postage prepaid to the judgment debtor at the last-known address of record with the third person and shall withhold delivery of the property or payment of the debt due to the levying officer or any other person for twenty days. On expiration of the twenty days, the third person shall forthwith deliver the property or pay the debt to the levying officer provided (i) if an exemption claim has been filed in accordance with subsection (d) of section 52–361b, the property shall continue to be withheld subject to determination of the claim and (ii) if a debt is not yet payable, payment shall be made when the debt matures if within four months after issuance of the execution.

a breach of contract action Galanis instituted against Schwartz/Misco based on the rights he retained under the August 26, 1982 stipulated order to recover the proceeds of the sale of Park City C.A.T.V. Associates as determined by Judge Krechevsky.

On December 20, 1984, Dayton appeared at the final meeting of this bankruptcy case and claimed that it had not received notice of the November 9, 1984 order of dismissal. Dayton further asserted that its right to estate assets was superior to Galanis and Armstrong, and to Schwartz/Misco in the event that Galanis succeeded in his breach of contract action.

On December 27, 1984, this court entered an order requiring the trustee to retain the funds remaining after payment of approved professional fees, "pending an Order for Distribution by the Bankruptcy Court." On January 16, 1985, Armstrong applied to the United States District Court for the District of Connecticut for an *Ex Parte* Order in Aid of Execution pursuant to Connecticut Public Act 83–581 Section 10.[8] On January 18, 1985, as a consequence of the conflicting claims of 1) Schwartz/Misco (for $170,000.00 based on the August 26, 1982 stipulated order); 2) Galanis, (based on the November 9, 1984 bankruptcy court order dismissing the petition and the state court garnishment); and 3) Armstrong, (based on the service of the execution of the *Feiner* judgment upon Galanis and the trustee), the trustee filed an interpleader action, pursuant to 28 U.S.C. § 1335, in the United States District Court for the District of Connecticut, *Gerstl v. Galanis, et al*, Civ. No. B–85–40, which was referred to Judge Burns. At that time the trustee held approximately $255,000.00

(the "interpleader fund"), of which $35,-000.00 is attributable to sources other than the settlement fund.

On January 21, 1985, Chief Judge Daly ordered the trustee to turn over all funds to the sheriff, except the portion disputed by Galanis and Schwartz/Misco. On that same date, acting pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Schwartz/Misco removed the breach of contract action to the District Court, *Galanis v. Schwartz*, Civ. No. B–85–46 (TFGD). On February 1, 1985, Dayton filed motions to intervene in the interpleader action and the ancillary *Feiner* proceeding. In addition, Dayton sought to vacate the *ex parte* order issued by Chief Judge Daly in that *Feiner* matter.[9]

On February 7, 1985, Armstrong filed a Motion For And Consent To Reference in the ancillary *Feiner* matter and the interpleader action pending before Chief Judge Daly and Judge Burns respectively, requesting that this judge adjudicate these matters pursuant to F.R.Civ.P. 53. Armstrong's motions were granted on February 15, 1985. In addition, upon motion by Schwartz/Misco, Galanis's breach of contract action was referred to this judge by Chief Judge Daly, pursuant to 28 U.S.C. § 157(c)(2), to be decided in conjunction with the interpleader and *Feiner* proceedings. On February 19, 1985, Dayton's motion to intervene and to vacate the *ex parte* order in the *Feiner* ancillary proceeding was also referred to this judge by Chief Judge Daly for review and determination. The referral included the authority to vacate the *ex parte* order. On March 12, 1985, Chief Judge Daly clarified the February 15, 1985 ruling to reflect that reference to the bankruptcy judge had been made

---

**8.** Conn.Pub. Act 83–541 Sec. 10 provided that:

(a) If an execution is issued, the judgment creditor may apply to the court for an ex parte order in aid of the execution directing the judgment debtor, or any third person, to transfer to the levying officer either or both of the following: (1) Possession of specified personal property that is sought to be levied on; or (2) possession of documentary evidence of title to property of, or a debt owed to, the judgment debtor that is sought to be levied on.

(b) The court may issue a turnover order pursuant to this section on a showing of need for the order.

(c) The order shall be personally served and shall contain a notice that failure to comply therewith may subject the person served to being held in contempt of court.

(Codified as amended at Conn.Gen.Stat., § 52–356b(1985).

**9.** The trustee and Galanis also filed motions to vacate this *ex parte* order.

with the consent of the parties pursuant to 28 U.S.C. § 157(c)(2).[10]

On April 29, 1985, this court granted Dayton's motion to intervene and assert its claim in the interpleader action. Thereafter, on June 12, 1985, pursuant to 28 U.S.C. § 2361, the trustee was discharged from any further liability to the parties arising out of the interpleader fund, and the bankruptcy court retained jurisdiction to determine the rights of the respective defendants.

On September 11, 1985, Galanis, Schwartz/Misco, Armstrong, and Dayton stipulated to a partial settlement granting Schwartz/Misco the right to receive $100,-000.00 from the interpleader fund in consideration for withdrawing all claims to that fund. In return, Galanis withdrew his claim to any portion of the interpleader fund claimed by Schwartz/Misco and agreed to the dismissal of his breach of contract action. The parties also stipulated that if Armstrong prevailed over Galanis in this interpleader action, Armstrong would credit Galanis with an additional $120,00.00 on any remaining amount Galanis owed Armstrong. At an October 23, 1985 status conference, the parties agreed that the conflicting claims of Armstrong and Galanis should be tried first. This court concurs, and with that objective in mind, vacates the *ex parte* order of the district court pursuant to Chief Judge Daly's February 19, 1985 authorization.

### B.

#### Origin of Armstrong's Claim

In order to assess the validity of their competing claims, the relationship between Armstrong and Galanis must be examined. According to the "Explanatory Memorandum Relating to the Sale of Shares of Common Stock of Armstrong Investors S.A.",[11] in 1969, Galanis and Akiyoshi Yamada ("Yamada") were instrumental in the formation of two Panamanian Corporations, Armstrong and Armstrong Investors, S.A. ("Investors"), as vehicles through which individuals who were neither citizens nor residents of the United States were able to invest in the securities markets in this country. The voting stock of Armstrong was owned exclusively by Investors. Individual investors received shares of Investors, and the funds received for that stock were transferred to Armstrong for investment. Neither Investors nor its shareholders had a direct interest in Armstrong. First National City Trust (Bahamas) ("FNCT"), a subsidiary of First National City Bank ("Citibank"), performed various domiciliary and general functions for both corporations, and in addition, employees of FNCT served as officers and directors of Armstrong and Investors.

#### The Delfino Action

On January 26, 1971, three Venezuelan shareholders in Investors filed an amended civil complaint in the United States District Court for the Southern District of New York, *Delfino v. Armstrong Investors S.A., et al,* Index No. 70 Civ. 5242, seeking to recover $13.5 million in damages for the alleged depletion of their investment by the fraudulent, negligent and other tortious conduct of Investors, Armstrong, Citibank, FNCT, various officers and directors of those entities, Everest Management Corporation (the investment manager for Armstrong) and its directors and officers, namely Galanis, Yamada, and Louis Zachary. The complaint specifically alleged that "500,000 shares of United Assets Group common stock were purchased for [Armstrong] by these defendants for a purchase price of $425,000."[12] Armstrong and Investors were served and answered. Galanis was not served nor did he appear in that action, which in May 1972, was settled and dismissed with prejudice as to Armstrong, Investors, Citibank, FNCT, and their offi-

---

**10.** 28 U.S.C. § 157(c)(2) provides in pertinent part that:
> the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments,

subject to review under section 158 of this title.

**11.** Galanis Exhibit 1.

**12.** Galanis Exhibit 5 at ¶ 20(d).

cers and directors, and without prejudice as to Galanis, Yamada, Zachary, and Everest Management Corporation. Prior to reaching settlement with the *Delfino* plaintiffs, Citibank entered into settlement agreements with the non-litigating shareholders of Investors. Under the terms of all of the settlement agreements, Citibank purchased all outstanding Investors stock and was assigned the rights to all causes of action with respect to that stock. The settlement agreements also provided that Citibank would use its best efforts to pursue those rights by itself or by a nominee.[13] Citibank retained the same attorney who represented Armstrong to pursue those claims.

### The Feiner Action

On April 2, 1975, Armstrong filed a second amended complaint against Galanis, Yamada, and others, alleging fraud in connection with the purchase and sale of 500,000 shares of United Assets Group, Inc. common stock.[14] Galanis was served and answered. Galanis's counsel was granted permission to withdraw on November 10, 1975. On March 1, 1976, several co-defendants, not including Galanis, filed a motion to implead Citibank, Investors, and others, as the real parties in interest. Judge MacMahon denied that motion. The same parties filed an "Order to Show Cause and Petition for Writ of Mandamus to Honorable Lloyd F. MacMahon" in the Court of Appeals for the Second Circuit, which was similarly denied. The case thereupon went to trial before a jury, and Galanis appeared *pro se*. On July 27, 1976, Judge MacMahon directed the entry of a verdict against Galanis stating that "[o]n the basis of his own testimony, own admissions, and the other evidence received, he's admitted his embezzlement of the $425,000 from the plaintiff."[15] Judge McMahon thereupon entered a judgment in the amount of $510,-579.00 against Galanis and a joint default judgment for the same amount plus costs

against Yamada and three other defendants.[16] Galanis did not appeal the judgment or seek to have it amended or vacated. Yamada obtained a release from Armstrong in 1977 in exchange for his agreement to supply information and testimony with regard to pending litigation to which Armstrong was a party.[17]

### 2.

### DISCUSSION

The parties acknowledge that Galanis's right to claim entitlement to the interpleader fund is derived from the November 9, 1984 dismissal of the involuntary petition, and Armstrong's right is derived from its judgment against Galanis in the *Feiner* action.

Galanis disputes the validity of Armstrong's judgment on the grounds that 1) Armstrong initiated the *Feiner* action as an assignee of the rights and interests of others and not as the real party in interest; 2) the assigned rights had previously been fully satisfied in the *Delfino* action; and 3) Armstrong was not entitled to use the *Feiner* action to seek contribution from Galanis since they were joint tortfeasors in the *Delfino* case. Furthermore, Galanis contends that notwithstanding the fact that he did not seek a determination of Yamada's equitable share at the *Feiner* trial, at the very least, this court should reduce Armstrong's judgment against him to reflect Yamada's equitable share pursuant to New York General Obligations Law § 15–108[18] because Yamada and Galanis were equally culpable and Armstrong released Yamada after judgment was entered.[19] In the alternative, Galanis contends that Armstrong's attorney committed a fraud upon the *Feiner* court which precludes enforcement of the judgment rendered in that action. Armstrong on the other hand, asserts that it instituted the *Feiner* action on

---

**13.** Galanis Exhibit 2.

**14.** Galanis Exhibit 9.

**15.** Armstrong Exhibit Q, sub-ex E.

**16.** Armstrong Exhibit A–1.

**17.** Galanis Exhibits 23 and 24.

**18.** See footnote 22 *infra*.

**19.** Galanis's Substituted Answer and Statement of Claim ¶ 34; Post-Trial Brief at p. 28.

its own behalf and not as the nominee of Citibank, but nonetheless argues that the claims raised by Galanis are barred by the doctrine of res judicata and denies that there was any fraud upon the *Feiner* court.

## Res Judicata

█ It is well settled that when a court of competent jurisdiction enters a final judgment based on the merits of a cause of action, res judicata prevents parties and their privies from litigating claims which were, or could have been, raised in that action. *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *Cromwell v. County of Sac,* 94 U.S. (4 Otto) 351, 352, 24 L.Ed. 195 (1876). Res judicata precludes litigation in a subsequent suit of all grounds and defenses that were available to the parties, whether or not they were actually asserted or adjudicated in the earlier proceeding. *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1978); *Angel v. Bullington,* 330 U.S. 183, 193, 67 S.Ct. 657, 662, 91 L.Ed. 832 (1947); *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940), *NLRB v. United Technologies Corp.,* 706 F.2d 1254, 1259 (2d Cir.1983). "Public policy dictates that there should be an end of litigation; that those who have contested an issue shall be bound by the result of that contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Iowa State Traveling Men's Ass'n,* 283 U.S. 522, 525, 51 S.Ct. 517, 517–18, 75 L.Ed. 1244 (1931).

Under the Federal Rules of Civil Procedure, the claims Galanis raises regarding the identity of the real party in interest, should have been asserted in the original action. Rule 9(a), F.R.Civ.P. provides in relevant part that:

[w]hen a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

Similarly his failure to plead satisfaction, contribution and the determination of equitable shares should have been raised in the trial court.[20] Rule 8(c), F.R.Civ.P. provides, in pertinent part that:

[i]n pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, ... payment, release, and any other matter constituting an avoidance or affirmative defense.

Galanis's failure to raise those defenses results in their waiver. *See In re Fine Paper Litigation State of Washington,* 632 F.2d 1081, 1090 (3rd Cir.1980) (prior judgment must be invoked as affirmative defense); *Audrieth v. Parsons Sanitarium, Inc.,* 588 F.Supp. 1380, 1381 (S.D.N.Y. 1984) (failure to raise the issue of equitable shares as an affirmative defense constitutes a waiver of the right to relief based on those equitable shares); *Marx & Co., Inc. v. Diner's Club, Inc.,* 400 F.Supp. 581, 585 (S.D.N.Y.1975) (accord precluding plaintiffs from raising claims must be affirmatively pleaded and may not be asserted following trial); 2A *Moore's Federal Practice* ¶ 9.02 (2d ed. 1986). Moreover, Galanis's reliance on New York General Obligations Law, § 15–108[21] is misplaced, since that law is not applicable to post-judgment settlements where equitable shares have not been previously established by the trial court. *See Rock v. Reed-Prentice Div.,* 39 N.Y.2d 34, 41, 382 N.Y.S.2d 720, 723, 346 N.E.2d 520, 523–24 (1976); *Cover v. Cohen,* 113 A.D.2d 502, 497 N.Y.S.2d 382, 388 (2d Dept. 1985). Accordingly I find that the claims raised by Galanis in his

---

**20.** See p. 961 *infra,* for a discussion of the availability of evidence to Galanis to support these claims and defenses.

**21.** N.Y.Gen.Oblig.Law § 15–108 (McKinney 1984) provides in pertinent part that a release of one tortfeasor releases joint tortfeasors:

to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

attack on the *Feiner* judgment are barred by res judicata.

### Fraud Upon The Court

As noted, Galanis alternatively claims that there was a fraud upon the *Feiner* court which provides grounds upon which this court may exercise its equitable powers to bar enforcement of the judgment obtained in that proceeding. Rule 60(b) of the Federal Rules of Civil Procedure establishes grounds upon which a court may grant relief from judgment and specifically preserves a court's inherent right to refrain from enforcing a judgment obtained through fraud upon a court. 7 *Moore's Federal Practice* ¶ 60.33 at 60–351 (2d ed. 1985). The saving clause in Rule 60(b) states that:

> [t]his rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment ... or to set aside a judgment for fraud upon the court.

Proper application of the rule effectively serves the ends of justice while retaining the integrity of the finality of judgments. *House v. Secretary of Health & Human Services*, 688 F.2d 7, 9 (2d Cir.1982); *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 79 (5th Cir.) *cert. denied*, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970).

██ The Court of Appeals for the Second Circuit has stated that the meaning of "fraud upon the court"

> has not been much elucidated by decisions. Obviously it cannot be read to embrace any conduct of an adverse party of which the court disapproves; to do so would render meaningless the one year limitation on motions under F.R.Civ.P. 60(b)(3). *See* 7 Moore, *Federal Practice* ¶ 60.33 at 511 (1971 ed.). Professor Moore submits that the concept should "embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Id.* at 515 (footnote omitted).

*Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972). *See also Travelers Indemnity Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985). Generally a finding of fraud on the court will be supported only by evidence of "the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated." *United States v. Int'l Telephone & Telegraph Corp.*, 349 F.Supp. 22, 29 (D.Conn.1972), *aff'd mem. sub nom. Nader v. United States*, 410 U.S. 919, 93 S.Ct. 1363, 35 L.Ed.2d 582 (1973), *citing Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). *See also Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir.1985) *cert. denied*, — U.S. —, 106 S.Ct. 862, 88 L.Ed.2d 901 (1986); *Pfizer, Inc. v. Int'l Rectifier Corp.*, 538 F.2d 180, 195 (8th Cir. 1976), *cert. denied* 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977). It is well established that the failure to disclose allegedly pertinent facts relating to a controversy before the court, whether to an adverse party or to the court, does not constitute "fraud upon the court" for purposes of setting aside a judgment pursuant to F.R. Civ.P. 60(b). *Kerwit Medical Products, Inc. v. N. & H. Instruments, Inc.*, 616 F.2d 833, 837 (5th Cir.1980) *citing H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115 (6th Cir.1976); *Kupferman, supra*, 459 F.2d at 1081; *United States v. Int'l Telephone & Telegraph Corp., supra*, 349 F.Supp. at 29. *See also Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978); 11 Wright & Miller, *Federal Practice & Procedure:* Civil § 2870, p. 254 (1973). Thus, where appropriate circumstances exist, an independent action may be maintained to provide relief from a judgment obtained through deliberate subversion of the judicial process which compromised the ability of the defendant to present his claim.

Galanis argues that Armstrong's counsel submitted two affidavits in 1976 to the Court in the *Feiner* action which affirmatively misled that court. In the first, James McIntyre, Esq., stated that in the

[*Delfino* ] settlement agreement between Citibank and the investors, Citibank agreed "to prosecute the *corporation's* claims for fraud in the *corporate* name." (Arm Ex. K at 9)(emphasis in original). He further specifically stated

> The instant action is duly and properly brought in the *corporate* name, by a legitimate corporation, [Armstrong], in its own name, in its own right, and for its own benefit.

*Id.* at n. 2 (emphasis in original). In the second affidavit, Mr. McIntrye unequivocally stated that $510,770.84 was "justly due and owing to the plaintiff, no part of which has been paid...." (JPG Ex. 20) [Armstrong's] counsel at no time informed the *Feiner* court as to the true terms of the full settlement agreements or that [Armstrong] was litigating as Citibank's nominee and as assignee of the rights of the investors.[22]

Although Galanis would have this court believe that Armstrong concealed the *Delfino* settlements and other evidence from him, his co-defendants, and the *Feiner* court, a careful examination of the record in the *Feiner* action reveals that that evidence was available at the time of the *Feiner* action and in fact was presented to the court by Armstrong's adversaries. The affidavit supporting their March 1, 1976 motion to implead Citibank and Investors, filed by several of Galanis's co-defendants, recited the facts of the *Delfino* action and settlements.[23] Furthermore, prior to the March 19, 1976 deposition of a Citibank official, a copy of one of the settlements was produced for the defendants, and Werner Polak, Esq., counsel for Citibank, testified that he informed the defendants that that sample agreement was not the only settlement agreement, but that all shareholders of Investors had executed virtually identical agreements.[24] Indeed, in their March 23, 1976 "Order to Show Cause and Petition for Writ of Mandamus to Honora-

ble Lloyd F. MacMahon", the same co-defendants who had filed the March 1, 1976 motion, specifically outlined the facts of the *Delfino* settlements and charged that, Citibank was the real party in interest[25] and that claims for contribution might exist.[26] Moreover, Galanis's name and address appeared on the master service list for the *Feiner* action giving him access to the information and documents available to his co-defendants.

It is therefore apparent that when Judge MacMahon entered judgment in the *Feiner* case, he was aware of the allegations that Armstrong was not the real party in interest but rather was pursuing claims assigned to Citibank by the shareholders of Investors which had been satisfied. It is also apparent that Armstrong and its counsel did not inhibit their adversaries from effectively pursuing their claims. Thus, while it is clear that Galanis's claims, if proven, would not rise to the level of fraud upon the court, *see Kerwit, supra,* 616 F.2d at 837; *Kupferman, supra,* 459 F.2d at 1078, here it is also obvious that those claims are invalid. Accordingly, I find there was no fraud upon the court.

### Conclusion

For the foregoing reasons, there is no basis for this court to disturb the *Feiner* judgment. The registration of that judgment in Connecticut and execution upon the trustee as stakeholder of Galanis's personal property created a lien on the interpleader fund in favor of Armstrong. It is therefore determined that Armstrong is entitled to the interpleader fund subject to Schwartz/Misco's right to the $100,000.00 as provided by the September 11, 1985 stipulation[27] and the future determination of Dayton's right.

---

22. Galanis Pretrial Memorandum at 17.

23. Armstrong Exhibit L Appendix.

24. Transcript I at 62, 67, 68.

25. Armstrong Exhibit L at ¶ 8.

26. *Id.* at ¶ 10.

27. *See* p. 957 *supra.*